## CLAY *et al. v.* WALTON.

Where a defendant entered into a contract with a builder for the construction of a brick house, and the builder applied to the plaintiffs, who were proprietors of a brick-yard, for the sale of the necessary brick, and the defendant said to the proprietors, to induce the sale, that he would become responsible for all the brick furnished his building, and whatever contract or agreement was made with the builder he would see carried out, or would pay for the brick if the builder did not: *Held,* that the promise of the defendant was within the Statute of Frauds.

Such a promise is conditional, and dependent upon the default of another. If there is any doubt as to its import, the Court will look to all the circumstances of the case to ascertain the intention of the parties.

Wherever the leading object of the promisor is not to become surety or guarantor of another, but to subserve some interest of his own, his promise is not within the statute, although the effect of the promise may be to pay the debt or discharge the obligation of another.

But the mere fact that the debt guarantied was for brick to be used in the building of the guarantor does not show such an object in the promise of the guarantor.

The interest which a promisor has in the performance of a contract by another, or the benefit which he may derive thereby, cannot determine his liability. That liability arises from the character of the promise; and the interest in the principal contract, and the benefit to be derived from it, become matters of consideration only as they may serve to determine that character.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

This was an action commenced by J. P. Clay and William Templeton, copartners in business, against the defendant, to re-

cover the sum of $2,366 10, for bricks alleged to have been sold and delivered to defendant. Defendant, in his answer, denied the indebtedness as charged in the complaint, and alleged that the bricks were sold and delivered to John S. Williams, with whom the defendant had contracted for the construction of a brick dwelling-house; that Williams by his contract was to furnish all the bricks and materials for said house, and that Williams did furnish such bricks and materials, and that defendant paid him for them as per contract.

On the trial, plaintiffs proved that the bricks were used in the construction of defendant's house; that Williams was about two weeks negotiating with plaintiffs for the purchase of the bricks; that plaintiffs wanted the defendant to become responsible for the bricks, and that Williams so informed the defendant, and he accompanied Williams to plaintiffs' brick-yard, and there the terms upon which plaintiffs were willing to sell the bricks to Williams were repeated over in presence of defendant. Defendant said " he would become responsible for all the brick furnished his building, and whatever contract or agreement was made, that he (defendant) would see carried out, or would pay for them if Williams did not," or words of similar import. The recollection of the witness was not clear, and he did not pretend to state the language or precise words. Nor does it appear whether the promise of defendant preceded or was subsequent to the contract with Williams. After the bricks were delivered, or a portion of them, defendant paid plaintiffs $500 on account of the bricks, and plaintiffs gave a receipt to Williams for the amount, and Williams receipted to defendant. Williams afterwards paid plaintiffs $500 more and took a receipt to himself on account of the bricks.

Plaintiffs refused to produce their books on trial, after notice from defendant to do so. It was also proved that plaintiffs had, prior to the institution of this action, commenced suit, by attachment, against Williams, for the same bricks mentioned in their complaint, and garnisheed defendant for the amount due from him to Williams.

This cause was tried before the Judge of the late Superior Court without a jury. Plaintiff had judgment. This Court was subsequently abolished, and the case transferred to the Fourth District Court, where, on motion of the defendant's counsel, a new trial was granted. From the order granting a new trial the plaintiffs appealed.

*Charles Halsey* for Appellants.

On the trial, it was proved that the bricks were used in the respondent's building.

From the testimony of Williams, it appears that he negotiated about a fortnight with Clay for their purchase; that Clay re-

quired Walton to become responsible; that he so informed Walton, who went with him to Clay at his brick-yard, where Williams repeated this; and Clay then wanted or required that Walton should be responsible; whereupon the latter said " he would be responsible for all the brick furnished his building, and whatever contract or agreement was made, he would see carried out, or would pay."

This was in August, 1855. The first delivery of the bricks, as is shown by the complaint, was about the twenty-second of that month.

Williams, on cross-examination, said : " I bought the brick and agreed to pay eleven dollars per thousand, and Walton agreed to pay for them. " Walton said he would be responsible for them, or would pay for them, or would see them paid for, or would see that they were paid for, or would pay for them, if I did not," or words of similar import. I could not vouch for the precise words.

The defence was set up that the bricks were sold and delivered solely on Williams' credit; and that Walton's promise was void by the Statute of Frauds.

This was a disputed question of fact. The evidence was on both sides of it, and the finding of the Judge should be final. 6 Barbour's S. C. Re., 141; 5 Id., 560; 5 Wen. Re., 25, Garder v. Hopkins; 15 Id., 492; 21 Id., 305; 12 Vermont Re., (Sinclair v. Richardson,) 33; Vogan v. Barrier, 1 Cal. Re., 186; Ingraham v. Buffon, 2 Id., 483; Grayson v. Guild, 4 Id., 122.

There was doubt as to what precise words, or which of the different expressions (for they were in the disjunctive and independent of each other) were used by Walton. Doubt as to the sense in which Williams used the words "I bought," etc.; doubt as to the real understanding between the parties whether the bricks were sold and delivered on Walton's or Williams' credit.

The defence was technical or sustainable only by a strict rule of law. The evidence justified a presumption consonant with the equities of the case; and the finding should not have been reversed. Graham on New Trials, 341 to 347, and 388 to 395.

The respondent who set up the Statute of Frauds must show incontestably that his undertaking was such as it contemplated. Darnall v. Tratt, 12 Eng. Com. L. Re., 36.

The real character of Walton's undertaking, is not to be determined by the precise words alone, but upon the whole conversation, then and before; the other facts, the relative situation and circumstances of the three parties, and Walton's subsequent conduct. Chitty on Contracts, 516, 507–8; Rob. on Frauds, 223; 12 Vermont Re., 33; 15 Pick. Re., 160; 5 Wen. Re., 23, and 277; 12 Eng. C. L. Re., 36; 17 John. Re., 114; 6 Alabama Re., 699, Bates v. Starr.

There was enough in the testimony and circumstances to sus-

tain the inference of an authority from Walton to Williams to contract with Clay that Walton should be primarily responsible, and pay Clay. Bates v. Starr, above, in 6 Alabama Re., 697; Darnall v. Tratt, 12 Eng. Com. L. Re., 36.

What Walton said authorized Clay to expect that he would pay him. This sufficed to justify the conclusion that the bricks were really sold on Walton's credit. Tileston v. Nettleton, 6 Pick. Re., 509.

Again: Walton's undertaking was not collateral, because it did not grow out of the same contract by which Williams, if at all, became liable. Rob. on Frauds, 218; and Buckmyr v. Darnall, cited there.

But admitting that the sale and delivery were on Williams' credit, still Walton was liable on his undertaking for new considerations distinct from Williams' liability.

Walton would derive the real and immediate benefit by getting materials for his own building. His promise was not merely to pay for property for another's, but his own, benefit.

In nearly if not all of the cases where the verbal promise was held void, the property was for the use of the original debtor. The benefit to Walton emanated from the appellants. 5 Wen. Re., 23 and 277; 9 Pick. Re., 305; 10 New Hampshire Re., 32; 12 Verm. Re., 33; 9 Eng. C. L. Re., Dixon v. Hatfield, 471; Rob. on Frauds, 228 to 35; Chitty on Contracts, 516 and '11.

Walton owed Williams on their contract, or would owe him upon delivery and use of the bricks; and from what had transpired between the three, and their conversation when together, followed by the delivery of the bricks, and their use in Walton's building, there resulted a transfer of Walton's indebtedness to Williams, and the latter's credit with the former from Williams to the appellants. Farley v. Cleveland, 4 Cow. R., 432 to 439; Chitty on Contracts, 511; Andrews v. Smith, and Towne v. Grover, 9 Pick. R., 305; Carnegie v. Morrison, 2 Metcalf R., 400 to 403.

The subsisting liability of Williams is no objection to a recovery against Walton, according to Farley v. Cleveland, and the cases therein cited. 10 New Hampshire, 32.

*Waller & Moore* for Respondents.

The promise of defendant to pay or become responsible for Williams' debt, if any such promise there was, was void under the Statute of Frauds.

"In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, expressing the consideration, shall be in writing, and subscribed by the party charged therewith." Art. 2. "Every special promise to answer for the debt, default, or miscarriage of another." Comp.

Stat. Cal., p. 200, § 12, "An Act concerning Fraudulent Convey-ances and Contracts."

In the case at bar, no such expressed consideration appears. Even taking the testimony of Williams as true to the letter, the promise is void.

Kent's Com., 123; Manrow v. Durham, 3 Hill, 384; Wain v. Walters, 5 East's Rep., 10; Sanders v. Wakefield, 4 Barnw. & Ald., 595; Jenkins v. Reynolds, 3 Brod. & Bing., 14. Says Chit-ty, Contracts, p. 507, " Where there is no previous liability, but-the promise of one is the inducement to and chief ground of the credit given to another, such promise is also a collateral under-taking, and within the statute. Elder v. Warfield, 7 Har. & J., 391, etc., etc.

A promise to pay the debt of another is within the statute even though made on a sufficient consideration. Simpson v. Pat-ten, 4 John, 422; Gallagher v. Brunel, 6 Cowen, 346; Chandler v. Davidson, 4 Black., 367.

The same is true though made before delivery of goods. 2 Stephens' Nisi Prius, 1284; Jones v. Cooper, 1 Com., 227.

Kent, C. J., says, Com., 3 vol., p. 123: "If the whole credit be not given to the person who comes in to answer for another, his undertaking is collateral and must be in writing." See, also, Leland v. Creyon, M'Cord, 100; Matson v. Wheream, 2 J. R., 80; Anderson v. Hayman, 1 H. Bl., 120; Buckmyr v. Darnall, 2 Ld. Raymond, 1095; Smith's Mer. Law, 535; 1 Saunders, 211 (a) note 5th ed.; Chitty Contracts, 507.

The Judge in this case admits that there was " a subsisting liability against Williams." But adds that that fact " would not, according to the case of Farley v. Cleveland, 4 Cowen, 432, and the cases there cited, make any difference," " the liability of the defendant being founded on a new and original consideration of benefit to the defendant, or harm to the plaintiff, moving to the promisor, either from the plaintiff or the original debtor."

The case of Farley v. Cleveland is as follows: "Farley sues Cleveland, declaring, specially, that one Moon, on the 22d No-vember, 1815, gave the plaintiff a promissory note with interest payable first of June thereafter. That on January 1, 1817, Cleve-land, on consideration of fifteen tons of hay, (value $150,) sold and delivered by Moon to him, at his instance, promised to pay the note of Moon to Farley." Held, Cleveland was liable to Farley, though Moon's liability continued, Cleveland's promise being " founded on a new and original consideration."

The case at bar is totally different from that of Farley v. Cleveland, and wholly wanting in all the elements relied on by Judge Shattuck, to bring it within the ruling of that case.

The alleged promise of defendant, if any such were made, was not founded on any new or fresh consideration, moving from

either plaintiffs, or Williams to Walton, nor does it appear that Walton derived any benefit whatever from it.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., and BURNETT, J., concurring.

The only question in this case for our consideration is whether the promise of the defendant is within the Statute of Frauds. The recollection of Williams of the language used by the defendant is not very clear. He does not pretend to give the precise words, and a slight mistake in this respect might have the effect of changing a promise, intended to be conditional and collateral, into an independent and original undertaking. But, if we assume that the language is accurately repeated by the witness, it is still insufficient to fasten a liability upon the defendant under the statute. It shows only a conditional promise, dependent upon the default of Williams, a promise as surety or guarantor of his contract. And if there be any doubt as to its import, we must look to all the circumstances of the case, to ascertain the intention of the parties at the time. The refusal of the plaintiffs to produce their books at the trial, after notice from the defendant, the form of the receipts for the money paid on account, and the affidavit in the attachment-suit, lead to the conclusion that the sale was made to Williams, and the promise of the defendant was intended to be conditional and dependent upon his default, and was so understood by the parties. It is difficult to perceive in what manner the plaintiffs can avoid the effect of their affidavit in the attachment-suit, as evidence that the contract of sale was made with Williams. No explanation of this affidavit is contained in the record, and the plaintiffs will hardly object that it is taken as true.

It is not clear whether the promise of the defendant preceded, or was subsequent to, the contract with Williams. If it preceded, or if it were concurrent with the principal contract, and constituted the main inducement to the credit given by the plaintiffs to Williams, it would be binding upon the defendant at common law. The consideration moving between the creditors, the plaintiffs, and the principal debtor, Williams, would be sufficient, and it would be immaterial whether the promise were direct and absolute, or conditional and dependent. . But, by the twelfth section of our Statute of Frauds, which is borrowed substantially from the fourth section of the English statute of 29 Car. 2, every special promise to answer for the debt, default, or miscarriage of another, is void, unless some note or memorandum thereof, expressing the consideration, be in writing, and subscribed by the party to be charged thereby; and the special promise in this case being to answer for the default of Williams, is directly within the provisions of this section, and is of course void. If the promise of the defendant were subsequent to the

22

principal contract, and made as an inducement to its performance by the plaintiffs, it would be equally within the statute. The consideration of the original contract would not attach to the subsequent promise. (Leonard v. Vredenburg, 8 John., 29.)

In Purkett v. Bates, (4 Ala., 390,) the plaintiff had agreed with one Kelly to construct for him a house, at the usual rate of charges. While the work was progressing, but before its completion, Kelly left the State, and went to Louisiana. The defendant then verbally promised the plaintiff to pay him, if he would proceed and complete the work. It was held, that the promise was collateral, and within the statute. The consideration consisted wholly in the performance, by the plaintiff, of his antecedent contract, and did not arise out of any new and distinct transaction.

It is contended by the appellants, that, admitting the sale and delivery of the brick were made on the credit of Williams, the defendant is still liable upon his promise, because the real and immediate benefit from the transaction was to be received by him, inasmuch as the brick were intended for the construction of his building.

It is well settled, that wherever the leading and main object of the promisor is not to become surety or guarantor of another, but to subserve some purpose or interest of his own, his promise is not within the statute, although the effect of the promise may be to pay the debt or discharge the obligation of another. The general rule is thus stated in Nelson v. Boynton (3 Metcalf, 396): " The terms original and collateral promise, though not used in the statute, are convenient enough to distinguish between the cases where the direct and leading object of the promise is to become the surety or guarantor of another's debt, and those where, although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to subserve or promote some interest or purpose of his own. The former, whether made before or after, or at the same time with the promise of the principal, is not valid, unless manifested by evidence in writing; the latter, if made on good consideration, is unaffected by the statute, because, although the effect of it is to release or suspend the debt of another, yet that is not the leading object on the part of the promisor." (Alger v. Scoville, 6 Gray, 306 ; 2 Parsons on Contracts, 306, and cases there cited.)

The correctness of the general rule is unquestionable, but it is difficult to see its application to the present case. There is no evidence that the building could not have been erected, and the requisite brick obtained by the contractor, if the defendant had made no promise, or that brick equally good could not have been obtained elsewhere, or that it was of any particular benefit to the defendant that the contract with Williams should have been carried out at all; and even had circumstances of this nature

appeared in the case, the question would still have arisen, as to what was the leading object and purpose of the promise. The interest which a promisor has in the performance of a contract by another, or the benefit which he may derive thereby, cannot determine his liability. That liability arises from the character of the promise, and the interest in the principal contract, or the benefit to be gained by its performance, become matters of consideration, only as they may serve to determine that character.

In Doyle v. White, (26 Maine, 341,) the plaintiff had agreed to deliver to a builder, stone at a stipulated price, to be used in a dwelling-house, but, previous to the delivery, he informed the defendant of his determination not to deliver the stone upon the credit of the builder; and the defendant thereupon said to the plaintiff: "You bring the rock, and I will see you paid for it." It was held, that the promise was within the Statute of Frauds, and not binding upon the defendant; and that any expectation or hope of profit from the sale of goods by the defendant to the builder, in consequence of his proceeding to construct a house, on being furnished with the rock, did not constitute sufficient consideration for the promise.

We are of opinion that the new trial was properly granted, and the order is affirmed.