ELLISON *v.* THE JACKSON WATER COMPANY AND BAYERQUE.

The term "ratified," when used in reference to a contract, is applicable only to contracts made by a party acting or assuming to act for another. The latter may then adopt or ratify the act of the former, however unauthorized. To adoption and ratification there must be some relation, actual or assumed, of principal and agent.

E. contracted with J. W. to construct an extension to a ditch, and after the ditch was completed, was to be paid out of the sales of water. At the time of the execution of the contract, B. held a mortgage upon the ditch. After E. had partly completed his work, B's mortgage fell due, and he brought an action to foreclose it, and had a Receiver appointed to receive the water rents of the ditch. E. refused to go on and complete the work. B. agreed with E., that if he would go on and complete the work, he should be paid out of the receipts from the sale of water by the Receiver. Under this promise, E. completed the work; *Held*, That this is an undertaking to answer for the debt, default or miscarriage of another, and is therefore within the Statute of Frauds.

It is essential to the validity of such contract, that it, or some note or memorandum thereof, be in writing ; that it express the consideration ; and that it be subscribed by the party to be charged thereby.

A promise by B. to perform J. W's contract, could furnish no consideration for a promise from E., nor could the consideration of the original contract attach to the subsequent promise of B.

The Act of 1850 gave a mechanic's lien only upon buildings and wharves. The Act of 1853 extended the Act of 1850, so as to include in its provisions bridges, ditches, flumes or aqueducts constructed to create hydraulic power, or for mining purposes. The Act of 1855 repealed the Act of 1850. *Held*, The repeal carried with it the supplementary Act of 1853, which extended the provisions of the original Act. Without the original Act, there was no mode of enforcing the supplementary Act. The latter was so dependent upon the former as to become utterly inoperative upon the repeal.

Neither the Mechanics' Lien Law of 1855 or 1856 give a lien upon canals or ditches. The language of the statute is, "building, wharf, or other superstructure." A ditch is not a building, or a wharf, and in no sense can it be designated a superstructure.

Flumes constructed at different parts of the line of a ditch, cannot change the general character of the work as an excavation. Such flumes are mere connecting links of the ditch over ravines and gulches, and the whole work must be regarded as a ditch.

Equity raises no lien in respect to real estate, except that of a vendor for the purchase money.

APPEAL from the Fifth District, County of Amador.

This was an action brought to recover a judgment against the defendants in the sum of $48,154.14, for services rendered by plaintiff under a contract with the Jackson Water Company, for the construction of a ditch or canal, and also for the enforcement of a mechanics' or laborers' lien upon the work.

On the twenty-second day of December, 1855, the plaintiff contracted, in writing, to and with the Jackson Water Company, for the construction of a certain ditch or canal in continuation of one owned by the company. By the terms of the contract, the plaintiff was entitled—after the water was let into the ditch—to collect the water rents, and retain one-half thereof, which was to be applied in discharge of his debt against the company for the construction of the work. It is alleged by the plaintiff, that he completed the ditch within the contract time. A breach of the contract is alleged by the plaintiff on the part of the company, by depriving plaintiff of the right to collect the water rents of the ditch, after he had collected only $2,790.36, leaving unpaid for the work $48,154.17. On the twenty-eighth of February, 1857, the plaintiff filed in the office of the County Recorder where the ditch is located, certain papers claiming a lien upon the ditch and its appurtenances, in pursuance of the provisions of the Mechanics' and Laborers' Lien Law. In the notice of his intention to hold a lien upon the work, it is alleged that the ditch was constructed by plaintiff between the twenty-second of December, 1855, and the twenty-eighth of January, 1857.

Prior to the making of the contract between plaintiff and the company, the company had mortgaged the ditch to the defendant, Bayer-

que, to secure the payment of $50,000. While plaintiff was in progress of the work, the mortgage debt fell due, and Bayerque instituted an action to foreclose the mortgage, and subsequently obtained a decree to that effect. Plaintiff alleges that, in June, 1856, he gave Bayerque notice of his contract, etc. Here is the allegation of the complaint upon which the plaintiff seeks to hold Bayerque responsible for the payment of the construction of the ditch : " On the —— —— day of June, A. D. 1856, the defendant Bayerque, by himself and by his agents and attorneys, in consideration that plaintiff would not abandon his said work, and would not sue defendants at that time, adopted and ratified said contract, and agreed and stipulated that plaintiff should finish the work aforesaid contracted for, and that he be paid therefor by the Receiver, Thomas B. Wade, who, it is prayed, be made a party to this suit, and who was appointed said Receiver in the suit for the foreclosure of the mortgage aforesaid between the defendant Bayerque and the Jackson Water Company ; and, pursuant to said stipulation, the said Receiver was directed to pay plaintiff for such work according to said contract, as expressed in the terms thereof. And the said plaintiff avers, that in consideration of said satisfaction of said contract, and believing that the defendant Moss was a party to such ratification —as plaintiff is informed and believes he was—the plaintiff proceeded to finish said work, and to complete the contract on his part ; and plaintiff avers that it ever was the intention of defendants, Moss and Bayerque, that said contract should be carried out, and that said defendants, knowing the premises, agreed and stipulated that the same should be done."

On the seventh day of July, 1856, the ditch was sold under the decree of foreclosure, and Bayerque became the purchaser ; and subsequently a Sheriff's deed was duly executed and delivered to Bayerque.

Plaintiff had judgment in the Court below for the amount of his demand and for the enforcement of his lien ; Bayerque appealed therefrom to this Court. No appeal was taken by the company.

*Levi Parsons* for Appellant.

I. It does not appear that Bayerque made any promise or agreement with the plaintiff, or with any one under whom the plaintiff claims.

It is not stated with whom, in what way, at what time, or under what circumstances, Bayerque " adopted," or " ratified," or " recognized," the contract.   It is difficult to ascertain what is meant by his adopting, ratifying or recognizing a contract to which he does not appear to have been either party or privy.   Bayerque cannot be charged upon contract, without its being alleged what contract he made.   Can any one tell from the complaint, what contract he made ?   With whom it was made ?   The terms of it ?   The consideration ?   When to be performed ?   What Bayerque was to do ?   and what the party contracting with him was to do, or was to pay ?

But, did Bayerque agree to pay the plaintiff for his work ?   No such thing is claimed.   Did Bayerque agree that the company would pay the plaintiff ?   That is not claimed.   Did he undertake to guarantee the performance of the contract by the company ?   There is no such allegation, in terms ; and if there were, such guaranty would be void as within the Statute of Frauds.

II.  Bayerque is not liable upon any of the allegations in the complaint, because any promise or undertaking which might be inferred from them, would be void within the Statute of Frauds, as a special promise to answer for the debt, default, or miscarriage of another. Compiled Laws, 200, 201, sec. 12.

If it can be gathered from the complaint that Bayerque made any contract whatever, it is, that he undertook to perform a contract which the Jackson Water Company had made, and which it was their duty to perform ; in other words, to answer for the debt, default or miscarriage of the company.   And this comes not only within the terms of the statute, but within the very mischief which the statute was intended to guard against.   If a person can be made liable, on such loose generalities as are contained in this complaint, to perform a contract entered into by another, the statute would be of no effect.   Indeed, such a construction would amount to a judicial repeal of it, and the gate would be thrown wide open for all the frauds and perjuries which the statute was made to shut out of Courts of Justice.

It is not pretended that Bayerque " subscribed" any " agreement," or note, or memorandum thereof, expressing the consideration "in

writing." His agreement, therefore, was void. This seems too plain to admit of discussion.

It is unnecessary to go over the authorities on this point, inasmuch as the case of Clay *et al. v.* Walton, 9 Cal. 328, saves us that trouble. The entire opinion of the Court might, with strict propriety, be embodied in this case; for the reasoning upon which it proceeds, and the authorities cited in support of it, are as applicable to the facts now before the Court, as they were to the facts in that case. And I ask the Court to consider that opinion as embodied *verbatim* in this argument.

III. Though the contract be valid, the law gave no lien for the work done under it.

No lien was given by the common law, and there is no statute giving one.

The Statute of 1850 (Compiled Laws, p. 808) gave a lien only on a "building or wharf." Under this Act it was held, (Burt *v.* Washington, 3 Cal. R. 246) that a bridge was not a "building," within the meaning of the Act, and was not subject to a mechanic's lien. Clearly it was not a "wharf."

But by the Act of 1853, (Compiled Laws, 811, 812) the Act of 1850 was extended so as to "include in its provisions bridges, ditches, flumes, or aqueducts, constructed to create hydraulic power, or for mining purposes," etc.

By the Act of 1855, (Laws of 1855, pp. 156—159, sec. 12) the Act of 1850 was repealed, which repeal, of course, carried with it the amendment of 1853; for, after such repeal of the Act of 1850, there was left no method of enforcing the amendment of 1853, and this amendment became, by reason of such repeal, a dead letter.

The same Act of 1850 was again repealed by the Statute of 1856. Laws of 1856, pp. 203—205, sec. 11.

The contract in question was made in December, 1855. The work under it was performed between the twenty-second day of December, 1855, and the twenty-eighth day of January, 1857, and must, therefore, have been mostly, if not entirely, done after the Act of 1856 took effect.

It might, therefore, be a very nice question, which Act must govern

the case.   But there is no need of discussing that question here, as the plaintiff can have no lien under either Act.

Both these Acts give a lien only upon a " building, wharf, or super-structure."   See Laws of 1855, p. 156, sec. 1; Laws of 1856, p. 203, sec. 1.

These statutes, from 1850 to 1856, being in *pari materia*, must all be construed together, as forming one general system.   (Dwarris on Stat. 568—572.)   In this way we arrive at the meaning of the several terms used by the Legislature.

The Legislature, by repealing the Act of 1853, which in terms gave a lien on " ditches, flumes and aqueducts, constructed to create hydraulic power, or for mining purposes," and by omitting these terms in the Acts of 1855 and 1856, have declared, as explicitly as they could, without using express negative words, that they did not intend to give a lien on " ditches, flumes, aqueducts," etc.

Even though we could not, however, resort to this clear legislative construction, and were left to interpret the Statutes of 1855 and 1856, from their terms alone, we must arrive at the same conclusion.   The words used in these two Acts are the same—" building, wharf, or superstructure " ; and it would be deserving of nothing but ridicule, to suppose a mining " ditch" to be included within either category, were it not that we are treating of serious matter, and that important interests are at stake.

The language of these Acts, giving rights in derogation of the common law, must be construed strictly.   Bottomly *v.* The Rector, etc., 2 Cal. R. 91 ; Houghton *v.* Blake, 5 Cal. R. 240.

We have seen that a " bridge " is not a " building or wharf," (3 Cal. R. 246) much less, then, is a " ditch."   Is the latter a " super-structure ?"   There might be some plausibility in calling a " bridge " a " superstructure."   But a " ditch "—who would think of denomi-nating a " ditch " a superstructure !"   We might as well call a hole in the ground a " superstructure."

A building and a wharf are classed by these Acts within the term " superstructure."   The language is, " building, wharf, or *other* super-structure."   The meaning, then, of the term " superstructure," extends only to things analogous to a " building," or to a " wharf ;" and thus,

the benefit of the Acts is extended only to " other superstructures," of a character similar to a " building " or a " wharf."

Again : that this is the true construction is made still more manifest by the language used in sec. 5 of Stat. of 1855, and by sec. 4 of Stat. of 1856.

Did these statutes give a lien for digging a tunnel through a mountain ? Why not, if it gives a lien for digging a " ditch " around one ? If the latter can be deemed a superstructure, I see no reason why the former should not be also. But the plaintiff might as well claim that the *cayote* has a lien upon his hole, " together with a convenient space around the same," or so " much as may be required for the convenient use and occupation of the premises."

*Smith & Hardy* for Respondents.

I. It is claimed by counsel that the complaint does not charge that Bayerque contracted with Ellison. The allegation is, that Ellison notified Bayerque of the terms of his contract, and demanded his adoption of it ; and in " consideration that Ellison would do the work and comply with the contract on his part, Bayerque adopted, ratified and confirmed it on his part." The contracting parties are tolerably clearly defined.

We refer the Court to the definition of " a contract " given in counsel's brief, from 2d Blackstone, 442, as our authority on this point, and then direct their attention to that part of the complaint of which the foregoing is an extract.

II. The next error assigned grows out of the attempt to enforce a lien, and counsel has construed statutes and cited authorities on statutory liens sufficient to make a very good library on that question. In reply it is not necessary to admit or deny his logic. It is sufficient to remind this Court that there were such things as equitable liens, and liens *ex contractu*, before our statute was made. We have heretofore been of the opinion, that if by contract a workman was to retain his work until he was paid therefor, that he had a lien on the work, not only as against the party for whom the work was done, but as against all the world. And we have further understood, that as against the

owner, equity always gave the vendor, laborer, mechanic or architect a lien for the price.

Let us see if we were right, when tested by authority.

In Bagley v. Greenleaf, the equitable lien of the vendor for the purchase money as against the vendee is fully recognized and confirmed, and many cases are cited in support of the decision.    7 Wheaton U. S. Reports, page 46;  Cox v. Fenwick, 3 Bibb, 183;  Fish v. Howland, 1 Paige, 29.

Independently of the  general equitable lien, however, there was a contracted lien.    The words of the contract are, that respondent is to have half the water running in the main flume, and is himself to sell the same and collect the rents thereof, until he is entirely paid.    In other words, the work itself is pledged for the payment of the contract price, and respondent was entitled to possession of it by virtue of this pledge.

In conclusion, upon this point we differ with  the learned counsel as to the effect of our statute.

It is admitted, that by the lien law of 1853, a statutory lien independent of the contract, would have existed.    A reference to the law will show that the Act of 1853 was an independent Act of the Legislature which  extended the provisions of the Act of 1850 to ditches, flumes, etc.    Then, in the reading of the Act of 1853, the words used in the law of 1850, should be considered part and  parcel of the latter law.    There was no repugnancy in their respective provisions, and the latter Act stood as if all the words of the former had been engrossed in and made a part of the latter.

The Act of 1855 only repealed the law of 1850.    The subsequent law was not affected by this repeal.    The fact that the same words in the law of  1850, as were used in the law of  1853, were stricken out of that law, would not by any reasonable construction strike them out of the other.    There is nothing in  the law of 1855 repugnant to the law of 1853.    The only persons affected by the law of 1855, are the mechanics and builders of houses, wharfs, and superstructures.    So far as the law of 1850 affected this class of liens, it was repealed, but so far as the lien of laborers and material, men on ditches, flumes and the like, were concerned, they were left where the law of 1855 had placed them.    See Act of 1855, page 159, sec. 12.

In the construction of legislative enactments, Courts will so construe the law as to give effect to all the legislative declaration, and where there are two statutes on the same subject, the Court will, if possible, so construe them as to give effect to each.    1 Blackstone's Com. 89.    Opinion of Chief Justice Murray, Cheever v. Hays, 3d California, p. 537.

" Another rule of equal importance is, that remedial statutes are to be liberally construed, and so as to most effectually secure the beneficial end in view."    Broom's Legal Maxims, marginal, p. 247.

Another salutary rule is, that a " law shall not be repealed by implication.    The repealing Act must either contain repealing words or be couched in negative language."    And again : " If both Acts be merely affirmative, and the substance such that both may stand together, they shall both have concurrent efficacy.    1 Blackstone, marginal pages 89 and 90.

But it is argued that the repeal of the law of 1850 took away the remedies of the Act of 1853.    This argument seems to us wholly untenable.    The Act of 1850 provided benefits to one class of persons ; the Act of 1853 provided them to another class.    The repeal of the Act for the former did not affect the latter.

III. As to the argument founded on the Statute of Frauds, we confess our inability to apply it to the case at bar.    Every word of Bayerque's promises were in writing.    The contract itself, when Bayerque took hold of it, was only executory.    The consideration had not passed, a debt had not been created, but on the contrary, his promise was his own.    The consideration was expressed in Parsons' letter to Captain Ellison.    " If you extend the ditch," the promise was, " the extension shall be pledged for payment."    In the stipulation made in the case of Bayerque v. " The Jackson Water Company," the consideration was again expressed " that Capt. Ellison do the work contracted for."    The promise was, " that he be paid therefor according to his contract."

FIELD, J., delivered the opinion of the Court—TERRY, C. J., and BALDWIN, J., concurring.

It is unnecessary to pass in review the several objections raised on

demurrer to the sufficiency of the complaint, and which are urged upon the attention of the Court by the counsel of the appellant in a very elaborate brief, as the case can be disposed of upon its merits, independent of any question of pleading.   The action is brought to recover a judgment against the Jackson Water Company and Bayerque, for work performed by the plaintiff in the construction of a ditch, under an alleged contract between him and the company, made in December, 1855, and to obtain a decree enforcing a lien claimed for the work upon the ditch thus constructed.   Other parties were made defendants, but as no judgment passed against them, they may be dismissed from the consideration of the case.   The action, as against the company, rests upon the alleged contract, and as against Bayerque, upon what is inaptly termed by the plaintiff its " adoption and ratification " by him.   The contract purports to have been made on the part of the company, by only three of its five trustees ; one of that number acting as attorney in fact for the third ; but whether for this reason, or for any of the reasons assigned, it was without binding obligation, it is immaterial to inquire.   The company have not appealed from the judgment, and cannot, therefore, raise any question as to the legality of the contract, and the defense of Bayerque rests upon independent grounds.   As against the company, the judgment for damages must be affirmed.   It is only necessary, then, to determine the effect of the alleged " adoption and ratification " of Bayerque, and the validity of the lien asserted upon the ditch.

It cannot in strictness be said that Bayerque " adopted and ratified " the contract between the plaintiff and the company.   These terms are properly applicable only to contracts made by a party acting or assuming to act for another.   The latter may then adopt or ratify the act of the former, however unauthorized.   To adoption and ratification there must be some relation, actual or assumed, of principal and agent.   No such relation existed between the company and Bayerque ; the contract between it and Ellison was not made in Bayerque's name, or for his benefit, or upon any authority from him.   What the plaintiff, however, intends by these terms, is this : that Bayerque assumed the obligations of the company to Ellison upon the contract, or in other words, guaranteed the performance of the contract on the part

of the company.   In examining, then, the evidence contained in the record, we find nothing which establishes or even tends to establish any undertaking upon which Bayerque can be personally charged. The stipulation of the solicitor in the foreclosure suit only goes to the extent of authorizing the Receiver to apply one-half of the net proceeds of the extension of Ellison, in pursuance of his contract with the company.   It does not purport to make any new contract, or to assume any obligation on the part of Bayerque, even had the solicitor possessed any power to do so, of which there is no pretense.   The certificate of the Receiver, based upon such stipulation, and the supposed authority of his appointment, acknowledging and confirming the contract, was utterly inoperative to charge Bayerque.   Neither the order or stipulation gave the least power to the Receiver to execute any such acknowledgment and confirmation.  And, besides, the Receiver testifies that neither Bayerque nor any of his agents either knew of it or assented to it.   The letter of Parsons does not even purport to have been written on behalf of Bayerque, or by his direction, or with his knowledge or approbation.   It purports to have been written after a consultation with T. F. Moss, who is not a party to the suit.   This Moss was, it would seem, a superintendent of the affairs of Bayerque in connection with the water ditch, but that his authority went beyond an ordinary superintendence nowhere appears.   No evidence was given that he possessed any power to make an original substantive contract of the character claimed by the plaintiff.   The record is bare of any attempt to establish the possession of such a power.

But aside from the view of the case upon the record, there is another fatal objection to the plaintiff's recovery.   The undertaking which he seeks to establish against Bayerque falls within the Statute of Frauds. It is an undertaking to perform a contract which the Jackson Water Company had made, and which it was obligatory upon the company to perform ; in other words, it was an undertaking to answer for the debt, default or miscarriage of another.   By the 12th section of our Statute of Frauds, which is substantially borrowed from the 4th section of the English statutes of 29 Charles II, it is essential to the validity of any such contract, that it, or some note or memorandum thereof, be in writing ; that it express the consideration ; and that it be subscribed by

the party to be charged thereby. Neither of these particulars are found in the present case. There was no agreement in writing, or any note or memorandum of any agreement, and of course it would be idle in such case to speak of the want of an *express* consideration or the subscription of the party. The plaintiff was bound by his contract to perform certain work for the Jackson Water Company. A promise to Bayerque to perform this contract could furnish no consideration for a promise by him. The consideration of the original contract could not attach to the subsequent promise. On this point the authorities are numerous, and without conflict. Clay v. Walton, decided by this Court, (9 Cal. 328) is one, and the cases cited in the opinion fully sustain the position.

In Packett v. Bates, (4 Ala. 390) the plaintiff had agreed with one Kelly to construct a house, at the usual rate of charges. Whilst the house was in the progress of erection, Kelly left the State, and went to Louisiana. The defendant then verbally promised to pay the plaintiff, if he would proceed and complete the work; and it was held the promise was collateral, and within the statute, and consequently without binding effect. The consideration resting wholly in the performance by the plaintiff of his antecedent contract, did not support the promise of the defendant.

The remaining question for determination relates to the validity of the lien asserted by the plaintiff upon the ditch. The Act of 1850 gave mechanic's lien only upon buildings and wharves. (Comp. Laws, 808.) The Act of 1853 extended the Act of 1850, so as to include in its provisions bridges, ditches, flumes or aqueducts constructed to create hydraulic power, or for mining purposes. (Comp. Laws, 811.) The Act of 1853 repealed the Act of 1855. (Sessions Laws, 156, sec. 12.) The repeal carried with it the supplementary Act of 1853, which extended the provisions of the original Act. Without the original Act, there was no mode of enforcing the supplementary Act. The latter was so dependent upon the former as to become utterly inoperative upon the appeal. The Act of 1855 gave a lien only upon buildings, wharves and *other superstructures*. The same is the case with the Statute of 1856. The work for which the plaintiff asserts a lien, was performed between the twenty-second of December, 1855,

35

and the first of February, 1857, and was therefore chiefly done after the Act of 1856 took effect. It is immaterial, however, under which Act the work was done, as both give a lien upon the same structures; neither gives a lien upon ditches in terms. The flumes constructed at different parts of the line cannot change the general character of the work as an excavation. These flumes were mere connecting links of the ditch, over ravines and gulches. As a ditch, then, the general work must be regarded, and as such, the statute gives no lien upon it for labor bestowed, or materials furnished, in its construction. The language of the statute is, " building, wharf or other superstructure." A ditch, of course, is not a building, or a wharf, and in no sense can it be designated a superstructure.

The plaintiff cannot, therefore, maintain the lien he asserts, under the statute ; and outside of the statute, there is no lien which can be enforced. Equity raises no lien in relation to real estate, except that of a vendor for the purchase money.

We purposely refrain from the expression of any opinion on the point whether Bayerque acquired any lien by his mortgage, or any right by his purchase, under the decree in the foreclosure case, upon the extension constructed by the plaintiff. The mortgage, it is true, does, in terms, purport to cover, not merely the works completed, or in progress at the time, but also lines of ditches and flumes for conducting or distributing water, which might be thereafter constructed by the company, as appurtenant to, or connected with, the works. This broad language cannot, however, we apprehend, give a lien upon ditches, for the construction of which no steps had been taken, by a survey and location of their lines, and which rested merely in contemplation. Some specific right of way—capable of identification from a previous survey or location—would seem to be necessary to constitute such property as is capable of mortgage or transfer, so as to pass subsequently constructed works thereon. In the present case, it does not appear from the record, whether, at the date of the mortgage, any survey or location had been made of the line of the extension : and without it, the property was not covered by the mortgage, and did not pass by the master's deed. It would still remain subject to execution on the plaintiff's judgment, as the property of the company. The

effect, however, of the mortgage in creating a lien, cannot be determined upon the evidence in the present case.

It follows, from the views we have taken, that the judgment for damages against the Jackson Water Company, must be affirmed, and that the judgment for damages against Bayerque, and the decree adjudging a lien upon the works constructed by the plaintiff, must be reversed, and the cause remanded for further proceedings.

Ordered accordingly.