[Civ. No. 3589.   Third Appellate District.—October 25, 1928.]

KIERULFF & RAVENSCROFT (a Corporation), Respondent, v. TRESA E. KOPING, Appellant.

A. H. Carpenter for Appellant.

Jacobs & Jacobs for Respondent.

PLUMMER, J.—Plaintiffs had judgment for the sum of $500, from which judgment the defendant appeals.

The action is founded upon a written guaranty in the words and figures following, to wit:

"Stockton, Calif., May 5, 1926.

"Kierulff & Ravenscroft,

"Dear Sirs,

"Following is a list of property owned by me described for the purpose of establishing my husbands credit with you who is the owner of the radio store known as the Stockton Radio Shoppe; 1 apartment house, value $31,000 at 437 E. Fremont St., Stockton (¼ interest); 1 22–acre ranch value $6500, six miles E. of Stockton on The Linden Road, (½ interest); 1 4–room bungalow at 150 Ramona St., Stockton, value $2700 (sole owner).

"Following is a list of the mortgages:

Apt. house ....................$12000
Ranch ........................$ 2500
House ........................$ 1400

"I hereby guarantee Mr. Koping's account to the amount of $500 Five hundred dollars.

"Signed, TRESA E. KOPING."

The transcript shows that at and prior to the execution of this guaranty, V. G. Koping, the husband of the defendant, was conducting a radio shop or store in the city of Stock-

ton, and that he desired to place in the store certain radio equipment or merchandise kept and sold by the plaintiff. It appears that this merchandise could only be handled by regularly licensed dealers, or at least was only sold to and through regularly licensed dealers. It further appears from the transcript that the plaintiffs, before selling such merchandise to the said V. G. Koping, desired some guarantee as to his credit, not being satisfied with V. G. Koping's credit rating as it theretofore existed. In pursuance of the understanding had between the plaintiffs, V. G. Koping and the defendant, relative to the sale and purchase of such radio equipment, the defendant signed the foregoing written guaranty, which guaranty was forwarded to the plaintiffs by the said V. G. Koping. Thereafter, and during the course of the business conducted by the said V. G. Koping, he ordered and received from the plaintiffs several hundred dollars worth of radio merchandise, leaving, on October 7, 1926, a balance due the plaintiffs of the sum of $600. During the course of the business conducted by the said V. G. Koping and his dealings with the plaintiff, it appears that he paid on account of merchandise purchased from them the sum of $542.

The action herein is founded upon the theory that the writing executed and delivered by the defendant to the plaintiffs is a continuing guaranty.

Some minor objections are urged by the defendant as a reason for ordering a reversal of judgment, but these objections all appear to be answered by the provisions of our Civil Code. ██ In the first place it is urged that the record shows no acceptance of the guaranty executed and delivered by the defendant. Section 2795 of the Civil Code, changes the rule announced in many cases, and provides that an absolute guaranty is binding upon the guarantor without notice of acceptance. ██ Some question is also raised as to whether notice was given to the defendant of the default of V. G. Koping in payment of the merchandise ordered from the plaintiffs. This objection, again, is obviated by section 2807 of the Civil Code, which reads: "A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice." These code provisions are a complete answer to the decisions of courts of other states having no

such legislative enactments. ■ As we read the record, there is really but one question in this case, and that is, does the writing executed by the defendant and delivered to the plaintiffs, as herein stated, constitute a continuing guaranty? If so, then and in that case the defendant is liable even though V. G. Koping purchased goods of more than twice the value of the amount specified as the extent of the defendant's liability, and also paid to the plaintiffs, during the course of his business dealings with them, a sum of money in excess of that set forth in the guaranty limiting the amount for which the defendant agreed to stand chargeable. The cases having to do with guaranties, set forth many examples and discuss the limitations contained therein whether as to time or as to amount, or as to a particular transaction, and hold the written guaranty as limited or continuing according to the purpose and intent appearing from an inspection of the writing itself, or when the writing is ambiguous, then resort is had to the surrounding circumstances under which the writing was executed, and testimony showing the same is admissible.

In the case of *Lean* v. *Geagan*, 20 Cal. App. 260 [128 Pac. 792] we find this statement: "A guaranty limiting the amount for which the guarantor will be bound, but without limitation as to time, and without circumstances to evince a contrary intention, will in general be construed to be a continuing guaranty and operative until revoked. The guarantor will be held liable to the extent of his guaranty, though the principal debtor may have, during the existence of the guaranty, contracted debts equal to or greater than the sum named therein." In this case the guaranty read in part: "In consideration of such sale and credit extended I hereby guarantee the payment of any and all indebtedness which may hereafter become due . . . provided the amount due or to become due shall at no time exceed the sum of $1000.00." The trial court at first held this to be a continuing guaranty; subsequently, granted a motion for a new trial, and upon appeal, the order granting a new trial was reversed. The controlling principle in that case appears to be the purpose for which the guaranty was granted, to wit: The establishment of a credit on the part of the person about to make purchase of merchandise. It appears, also, that the merchandise purchased in that case

was not merchandise included in one order, but merchandise purchased upon successive orders. The holding of that case is further to the effect that there being no limitation of time, and no limitation as to the guaranty of any specific order, it ran in favor of the person to whom the guaranty was executed, to the extent of the sum of $1,000, the limitation mentioned having reference only to the amount of the guarantor's liability, and not to the extent of the dealings between the purchaser and the one giving credit.

In the case of *Nason & Co.* v. *Kennedy*, 40 Cal. App. 159 [180 Pac. 349], circumstances were presented from which the court held that the writing executed and delivered as a guaranty was not a continuing one. The writing involved in the Nason case is worded as follows: "I do hereby guarantee the account of L. C. Kennedy up to the sum of $750.00, for what goods in your line he may purchase from you, and it is understood that if he does not pay his bills under the terms of purchase, that I will pay them or see that they are paid." The court, in its opinion in that case, observes that the guaranty was silent as to what particular account or bill it referred to, and, therefore, that under such uncertainty, resort should be had to the circumstances surrounding the execution of the instrument in order to determine the intention of the parties, and that the circumstances as disclosed by the evidence, showed that the defendant's son was desirous of engaging in the mercantile business and had placed an initial order for a stock of goods with the Los Angeles agent of the plaintiff, whose place of business was in the city of San Francisco. Upon receiving this order, the plaintiff wrote to the agent, stating, in substance, that it could not make shipment of the goods unless payment thereof was guaranteed, and inclosed with its letter the form of guaranty, with the request that the agent have the mother of Kennedy sign the same, etc. And it appears from this, and from further statements in the opinion in that case, that there were sufficient facts disclosed to justify the trial court in finding that the intent and purpose of the guaranty was to cover the particular transaction, to wit, the initial order of a stock of merchandise, and was not a guaranty covering other or further transactions. The writing in the Nason case contains nothing which indicates a purpose to establish the credit of the

intending purchaser. It would appear that a stock of goods was being ordered, and the mother of the purchaser simply guaranteed the payment of the specific stock of goods ordered. In the case at bar the whole instrument must be read together, the first sentence as well as the last clause. In the first sentence the intention of the guarantor is expressed in direct language, to wit: "For the purpose of establishing my husband's credit with you," etc. The record in this case indicates a like purpose, and while we think the instrument itself discloses, sufficiently, the purpose, and that oral testimony was unnecessary, the admission of oral testimony indicating a like purpose cannot be held prejudicial.

In the annotation to the case of *Scovill Mfg. Co.* v. *Cassidy,* Ann. Cas. 1918E, page 611, appears a long list of cases, so many as to prohibit their being set forth herein, supporting the following statement: "Where, by the terms of the guaranty, it is evident that the object is to give a standing credit to the principal, to be used from time to time, either indefinitely or for a certain period, it is generally deemed a continuing guaranty." And, further: "Whether a contract of guaranty is a continuing undertaking, is a question of intention which must be gathered from the instrument itself or from the course of dealing between the parties, or from both. If it appears that a future course of dealing for an indefinite time, or a succession of credits to be given, was contemplated by the parties, the contract will be construed to be a continuing guaranty." It is further held that the mere fact that the person for whose benefit and credit the guaranty is executed in the course of his dealings, has bought and paid for more goods than the amount specified in such instrument, does not discharge a continuing guaranty. On the other hand, as stated in 28 C. J. 959: "Where a guaranty contains no express limitation as to either time or amount, and there is nothing in the instrument itself from which it can be inferred that it was a guarantor's intention to leave it open as to both, the guaranty will generally be understood as referring to a single transaction," etc. In the instant case there is a limitation as to the amount, and, therefore, subject to the rule stated in the same vol-

ume on page 960: "Where the guaranty contains a limitation as to the amount for which the guarantor will be bound, but contains no limitation as to time, and there is nothing in the circumstances surrounding the execution of the contract to evince a contrary intention, it will in general be construed to be a continuing guaranty and operative without limit, except as to the amount of the liability, until revoked. The limitation mentioned in such a guaranty has reference to the amount of a guarantor's liability, and not to the amount of dealing between the principal and the guarantee," etc. Likewise, as appears on page 961 of the same volume: "Although the amount is limited, the liability under the guaranty will be regarded as continuing when, by the terms of the contract, it is evident that the object is to give a standing credit to the principal debtor, to be used from time to time either indefinitely or until a certain period," etc. This latter statement coincides precisely with the circumstances presented in the instant case, to wit, the giving of a standing credit.

While the subject of construction of guaranties has received considerable attention, it is now held that an instrument of guaranty is to be construed like any other instrument, neither to limit nor to extend the terms of the instrument under or beyond the intention of the parties, but to effectuate the purposes for which the writing is executed. (See note to *Scovill Mfg. Co.* v. *Cassidy*, Ann. Cas. 1918E, 609.) That the writing in the case at bar was intended to be a continuing guaranty is further shown by the size of the merchandise order of V. G. Koping, at the time of the execution of the instrument. That order shows a purchase of merchandise in the value of only $85.70, and it is not reasonable to hold that the guaranty in the sum of $500 was executed simply to cover that specific order, or any other particular specific order, and if such is not the case, then it necessarily follows that the purpose of the instrument was to establish the credit of V. G. Koping, and charge the defendant with liability for his dealings with the plaintiffs to the extent, at least, of the sum of $500.

While the objection has been raised, we find nothing in the record which indicates a purpose or intent to vary the terms of the written instrument, though the record does

contain testimony disclosing the intent of the guarantor, just as set forth in the writing signed by her.

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.