[Civ. No. 3833. Third Appellate District.—September 30, 1929.]

A. S. GOLDMAN, Appellant, v. WILLIAM DANGER-FIELD et al., Respondents.

M. J. Cheatham for Appellant.

McCoy & Wetter for Respondents.

PLUMMER, J.—The plaintiff, as the assignee of Meyer Cloak & Suit Company, instituted this action to recover judgment against the defendants upon a written guaranty signed by them, in the words and figures following, to wit:

"We hereby guarantee payment for all merchandise purchased from Meyer Cloak & Suit Company, and Granada Knit Mills by Mrs. N. L. Stucky of Red Bluff, California, up to the amount of Fifteen Hundred Dollars ($1500.00).

"WM. DANGERFIELD.
"E. J. BAKER.

"Witness: C. E. PATTERSON.
"Dated: March 3, 1925."

The defendants had judgment and the plaintiff appeals.

The crucial question involved in this case is whether the guaranty just set forth constituted a continuing guaranty. If so, the judgment of the trial court should be reversed, the court having held that the instrument just set forth did not constitute such a guaranty. The record is silent as to transactions between Mrs. Stucky and the Meyer Cloak & Suit Company and the Granada Knit Mills prior to March 3, 1925. However, the record does show that on March 3, 1925, Mrs. Anna L. Stucky was, and prior thereto had been engaged in the business of selling ladies' furnishing goods, and had a store in the city of Red Bluff where such business was conducted by her. The record further shows that the guarantors knew of the business conducted by Mrs. Stucky, and had been aware of her conducting such business for at least some time prior to the execution of the guaranty. The record shows that after the execution of the guaranty Mrs. Stucky opened an account with the Meyer Cloak & Suit Company, and continued to buy merchandise from said company up to and including December 15, 1926, purchasing in all merchandise of the value of something over $5,000, and paid thereon, from time to time, sums aggregating $3,944.63. There is nothing in the record to show that at the time of the execution of the guaranty it was contemplated that Mrs. Stucky was buying a complete

stock of goods, or that the guaranty was intended to cover a single transaction. The account admitted in evidence, to which we have referred, shows that the merchandise was bought from time to time as wanted by Mrs. Stucky in dealing in the furnishing goods referred to. On the fifteenth day of September, 1926, the defendants, Dangerfield and Baker, signed and delivered to the assignor of the plaintiff a notification that they thereby canceled, terminated and withdrew from the guaranty dated March 3, 1925. As bearing upon the question of whether the guaranty was a continuing one, the court admitted the following testimony (we quote from the testimony of the defendant Baker): ''Q. By Mr. McCoy: Mr. Baker, you were shown this morning by counsel for the plaintiff the paper that is sued upon and called a guaranty, and it has been introduced here and marked 'Plaintiff's Exhibit 1.' . . . Now, handing you the paper, that you may see what it is again, I will ask you if you understood at the time you were signing that paper, and all the time since, that your obligation under that paper was a continuing or not a continuing guarantee? A. No, sir. Q. Well, what did you understand? A. I understood that when she got the first bill of goods that whenever she paid any money in for those bills that it was to be credited on that first bill. Now, that was the way I believe that guarantee was, just like an open account, and as fast as she paid her credit was to be paid on the first bill bought. Q. Well, did you understand that that was to be continued from time to time and indefinitely? A. Not for a long time.'' In this connection we quote from the transcript three letters, one from the Meyer Cloak & Suit Company to E. J. Baker, a reply thereto by Dangerfield, and a letter by Baker stating that he was familiar with the Dangerfield letter:

''San Francisco, Jan. 26, 1926.

''E. J. Baker,

''Red Bluff, Calif.

''Dear Sir:

''In the matter of Nancy Lee Stucky, we have a guarantee executed by you to cover the amount of $1500.00. This guarantee was made on March 3rd, 1925, and at the present time the account of Nancy Lee Stucky is considerably beyond the guarantee, namely $1500.00, and her account has

never been reduced enough to bring the balance down to $1500.00.

"On the other hand, we feel that not only the amount beyond the $1500.00, but the $1500.00 as well should have been paid long ago. If you had figured interest on same, it would amount to a considerable sum. Please let us know as to the settlement of the account.

"We have made a proposition to Mrs. Stucky, in which we would be only too willing to send merchandise on consignment instead of selling her outright, and in this way, she would benefit on the sale of each and every garment, and would at the end of the accounting period, which is about ten days, settle the entire transaction, namely, return the merchandise not sold, and send us her check for the garments sold, but before this proposition can be considered, the account must be closed in some satisfactory way.

"We would like to hear from you by return mail, as to just what you think of the matter and how to adjust same satisfactorily.

"Yours truly,
"Meyer Cloak and Suit Co.
"H. J. Schmidt."

"Red Bluff, Cal. Jany 28, 1926.

"Meyer Cloak & Suit Co.,
    "130 Sutter St., S. F.
"Dear Sirs:

"I am in receipt of your letter of the 26th instant. I fail to see why you should be uneasy in regard to Mrs. Stucky's acc.

"In the short time during which she has been in business she has paid you well over $3000.00. I understand that she has offered you notes for the small balance over the $1500.00 and these notes will be duly sent. The only thing is to reduce the $1500.00 so that you may supply her with more goods, and this she should be in a position to do early next month, when her collections come in.

"You must be quite aware that it is hard to get money out of customers at the moment, but Mrs. Stucky's book debts are all good and she only requires time to come along all right. She has undoubtedly the best class business in this town.

"It would appear to me to be your own interest to help her along as a good future customer.

"I am,

"Yours truly,
"WM. DANGERFIELD."

"Red Bluff, Calif., Jan 29th, 1926.

"Meyer Cloak Co.,
     "San Francisco, Cal.
"Gentlemen:
"Your letter 26th

"Mr. Dangerfield advises me he has answered yours to him which is the same as to me. He has kept in touch with Mrs. Stucky's affairs and has written you about all that can be said just at present I cannot add anything as he says he has explained conditions fully.

· "Yours truly,
"E. J. BAKER."

The transactions which we have heretofore referred to show conclusively that the guaranty was not intended to cover a single purchase. By its own terms it refers to and covers "all merchandise purchased," and thus, section 2814 of the Civil Code directly applies. That section reads: "A guaranty relating to a future liability of a principal, under successive transactions, which either continue his liability or from time to time renew it after it has been satisfied, is called a continuing guaranty." Here, the guaranty covers successive transactions of the principal, Mrs. Stucky. Her liability was renewed from time to time as she purchased merchandise on the open account. There was no time limit in the guaranty. The only limitation therein contained was and is as to the extent of the obligation. The obligation of the principal, Mrs. Stucky, was continued and renewed from time to time as she purchased merchandise, as shown by the account set forth in the transcript.

To sustain the judgment of the trial court the respondents first cite the case of *Nason & Co.* v. *Kennedy*, 40 Cal. App. 159 [180 Pac. 349]. The circumstances of that case are almost the antithesis of the case at bar. In the Nason case, L. C. Kennedy, the son of Mrs. Kennedy, who signed the guaranty, was desirous of obtaining a stock of goods, and had ordered a stock of goods from Nason & Company in

excess of the sum of $750. This order Nason & Company declined to fill in that sum, but reduced the same to $750, and informed Kennedy that if his mother would sign a guaranty in the sum of $750, the order would be filled to that value. The mother thereupon signed the guaranty involved in that action. The evidence introduced upon the trial of the case justified the conclusion of the trial court that the guaranty was only intended to cover the initial order of L. C. Kennedy for goods to the value of $750.

In the case of *Lean* v. *Geagan,* 20 Cal. App. 260 [128 Pac. 792], it is said: "A guaranty limiting the amount for which the guarantor will be bound, but without limitation as to time and without circumstances to evince a contrary intention, will in general be construed to be a continuing guaranty and operative until revoked. The guarantor will be liable to the extent of his guaranty, though the principal debtor may have, during the exercise of the guaranty, contracted debts equal to or greater than the sum named therein. The limitation mentioned in the guaranty refers to the amount of the guarantor's liability, and not to the amount of the dealing between the purchaser and the one who gives the credit."

A case identical in principle, though differing somewhat as to the facts, is that of *Sinnige* v. *Oswald,* 170 Cal. 55 [148 Pac. 203, 204], where the guarantor had guaranteed the payment of rent up to the amount of $1,000. The total rent involved in the lease was a very much larger sum. We find the following language in the opinion: "The defendant Furniture Company contends that its contract of guaranty did not extend beyond the sum of $1000.00 agreed to be paid by the principal as rent under the lease; and that, since the evidence shows payment by the lessee of more than $1000.00 of such rental, it follows that the guaranty is fully satisfied. This contention cannot, we think, be sustained. . . . The purpose of the guaranty was to provide the lessor with security for successive payments of rent. The total rent aggregated over $40,000.00, and the words 'up to the amount of $1000.00' were designed to fix a limit on the guarantor's total liability."

In 28 C. J. 961, where the amount of the guaranty is limited but time is not, the law applicable is thus stated: "Where the guaranty contains a limitation as to the amount

for which the guarantor will be bound, but contains no limitation as to time, and there is nothing in the circumstances surrounding the execution of the contract to evince a contrary intention, it will, in general, be construed to be a continuing guaranty and operative without limitation, except as to the amount of liability, until revoked. The limit mentioned in such a guaranty has reference to the amount of dealing between the principal and the guarantee and the guarantor will be held liable to the extent of his guaranty, notwithstanding the principal debtor may have, during the existence of the contract, contracted debts to an amount equal to, or greater than, the sum named in the guaranty, and paid them. But where it is apparent, either from the language of the guaranty itself or from such language in connection with the circumstances, that the intention was to limit the guaranty to the amount specified for the first transaction, or series of transactions, it is not a continuing one and will not extend to other transactions after such limit has once been reached." In the case at bar it is evident that there is nothing in the surrounding circumstances to show that the intention was to limit the guaranty to any particular transaction. It was simply a guaranty covering "all merchandise purchased," without any limitation as to time, and had no reference whatever to any initial stock of goods or any particular order for goods. The letters which we have set forth show that there was no intent to limit the guaranty to any particular order. The best that can be made of it is that the defendant Baker thought the guaranty was not to continue "for a long time," which justifies only the conclusion that he knew the guaranty covered successive transactions.

In 13 California Jurisprudence, page 95, in treating on the subject of guaranty, the text is as follows: "Whether or not a guaranty is continuing must be determined from the language of the instrument, or in case of an ambiguity, by resort to parol evidence of the situation surrounding all the parties, and the guaranty interpreted in the light of such circumstances. The tendency of the decisions in this country, however, has been against construing guaranties as continuing, unless the intention of the parties is clearly manifested so that if there is any doubt as to what was intended, the presumption is against holding the guaranty to be con-

tinuing." Here, the circumstances surrounding the parties at the time of the execution of the guaranty show that Mrs. Stucky was engaged in the business of buying and selling ladies' furnishing goods, and that in the pursuit of her business it was necessary to purchase such goods from time to time as the trade warranted. There is nothing in the guaranty itself which appears to be ambiguous or uncertain. It was for all goods to be purchased, and limited only as to amount, the parties executing the guaranty having knowledge of the kind of business the person was conducting, for whom they were becoming guarantors. Further, quoting from 13 California Jurisprudence, page 96: "A guarantor may limit the amount for which he will be liable, or the time for which his guaranty will run, or may limit his liability to a single transaction between the principal debtor and the creditor, as distinguished from a continuing guaranty. However, a limitation as to the amount for which the guarantor will be liable does not militate against the construction that the guaranty is a continuing one. Such a limitation is not construed as a condition as to the extent of credit to be given, the breach of which would release the guarantor so the guarantor will still be liable even though the creditor has, at various times, contracted and paid debts equal to, or greater than the amount of the guaranty."

In the note to *Scovill Mfg. Co.* v. *Cassidy*, reported in Ann. Cas. 1918E, 602, beginning on page 609 [275 Ill. 462, 114 N. E. 181], is collated a large number of cases dealing with the subject of guaranties. The principal case there cited is to the effect that where a written guaranty shows that the parties look to a future course of dealing or a succession of credits, the guaranty is considered as continuing; that a limitation as to the amount of the guaranty is only a limitation of the obligation of the guarantor, and does not change its continuing character. On page 611 of the volume referred to a number of cases are cited supporting this statement of the law that where, by the terms of the guaranty, it is evident that the object is to give a standing credit to the principal, to be used from time to time either indefinitely or for a certain period, it is generally deemed a continuing guaranty.

■ "Whether a contract of guaranty is a continuing undertaking is a question of intention which must be gathered from the instrument itself, or from the course of dealing between the parties, or from both. If it appears that a future course of dealing, for a definite time or a succession of credits to be given, was contemplated by the parties, the contract will be construed as a continuing guaranty." This exactly applies in the case at bar. The course of dealing and everything connected therewith shows that there was in contemplation a succession of credits. The guaranty gave to the principal creditor a credit to the extent of $1500. Again, as there said: "A continuing guaranty contemplates a succession of liabilities for which, as they accrue, the guarantor becomes liable. It is prospective in its operation, and is generally intended to provide security in respect to future transactions, within certain limits." This, again, is exactly the situation presented by the case at bar. On the same page, citing a number of authorities, we find the following: "Unless the words in which a guaranty is expressed, fairly imply that the liability of the guarantor is to be limited, it is generally regarded as continuing until the guaranty is revoked." And further: "While the courts differ as to what words constitute a continuing guaranty, they seem to agree that if the contract is found to be a continuing guaranty, the payments by the principal do not discharge the guarantor unless they discharge the full debts to which the guaranty attaches." A number of illustrations of guaranties held to be continuing are found in the note referred to. Thus, a guaranty of payment for all goods which a person may buy from another is held to be continuing. This is almost identical with the language of the guaranty under consideration.

In the case of *Kierulff & Ravenscroft* v. *Koping*, 94 Cal. App. 473 [271 Pac. 353], this court had occasion to consider the same questions presented on the present appeal. The opinion in the Koping case takes up and sets forth, somewhat at length, the authorities bearing upon guaranties, and there cited the same cases which are referred to herein. Upon this appeal both parties rely somewhat upon the Koping case. An examination of that case reveals the same state of facts that exist in the present case. The guaranty was not given to cover simply an initial purchase but was

given to cover successive purchases as they might be made from time to time. In the present case the guaranty was not given to cover an initial purchase. The facts which we have hereinbefore set forth show that it was intended to cover a succession of orders. In the Koping case the guaranty read as follows: "I hereby guarantee Mr. Koping's account to the amount of $500.00. Signed, Teresa E. Koping." True, in addition to the guaranty there was a recitation of the property owned by the guarantor, and, also, in the recitation, a statement that it was given for the purpose of establishing Mr. Koping's credit. In the present case the guaranty does not contain a statement of the property owned by the guarantors, but in the language used, and under the circumstances existing when it was given, the character of the business being conducted by Mrs. Stucky lead irresistibly to the conclusion that it was intended to give credit to Mrs. Stucky to the extent of at least $1500. Not being given to cover an initial purchase, there is nothing upon which to base a finding that the guaranty was not a continuing one. The whole record shows a continuing business, a succession of orders, a continuing liability, and therefore necessitates the conclusion that the guaranty was a continuing one, just as provided for in section 2814 of the Civil Code. We do not deem it necessary to quote at length from the opinion in the Koping case, and will confine ourselves to the simple statement that the principles therein enunciated, showing the guaranty there involved to be a continuing one, are applicable here.

From what we have set forth it is evident that the findings of the trial court in this case are unsupported by the evidence and that the judgment must be reversed. It is so ordered.

Thompson (R. L.), J., and Finch, P. J., concurred.