Cicardi A. BRUCE et al.,
Plaintiffs-Respondents,

v.

LANDMARK CENTRAL BANK &
TRUST CO. et al.,
Defendants-Appellants.

No. 41131.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 27, 1979.

Lashly, Caruthers, Thies, Rava & Hamel, Thomas Cummings, Clayton, for defendants-appellants.

Gallop, Johnson, Godiner, Morganstern & Crebs, P. Terence Crebs, Stephen H. Rovak, John P. Walsh, St. Louis, for plaintiffs-respondents.

CRIST, Judge.

Appeal from partial summary judgment discharging plaintiffs' further liability on guaranties. We reverse and remand.

On February 3, 1972, Bruce-Burgess Printing Co. ("Bruce Printing") and Landmark Central Bank & Trust Co. ("Bank") entered into a loan agreement. Under the agreement, Bank agreed to extend credit to Bruce Printing. Also on February 3, 1972, three separate guaranties were executed, one by Cicardi A. Bruce and Helen A. Bruce, his wife, one by Cicardi A. Bruce, Jr., and Phyllis Bruce, his wife, and one by Mary Gertrude Boerger, now deceased. Cicardi A. Bruce, Helen A. Bruce, and Cicardi A. Bruce, Jr., were at all relevant times the sole shareholders and officers of Bruce Printing; Mary Gertrude Boerger was the mother of Helen A. Bruce.

Relevant portions of the guaranties, which are identical, read as follows:

"NOW, for value received, and in consideration of the sum of One Dollar paid to the undersigned, the receipt of which is hereby acknowledged, and of other visible considerations to them moving, the undersigned jointly and severally for themselves, their heirs, executors and administrators, hereby guarantee to said Bank, its successors and assigns, the prompt payment as they may severally mature of any or all loans made, or which may be made, to said Borrower [Bruce

Printing] by said Bank, as well as any and all renewals thereof and of all indebtedness that is now or at any time hereafter may be or become owing from said Borrower to said Bank not exceeding in the aggregate $335,000.00.

This instrument is intended to be and shall be a continuing guaranty and agreement and shall apply to and cover all loans, discount or renewals thereof made by said Bank and all indebtedness of any kind due to said Bank from said Borrower prior to notice in writing given to the Treasurer of said Bank by the undersigned that they will not be liable upon any further loans or discounts accepted or indebtedness incurred after the receipt of such written notice.

If the indebtedness of the Borrower to the Bank shall at any time exceed the sum last mentioned, this guaranty shall, nevertheless, extend to and cover the amount of all indebtedness of the Borrower which may at any time exist, but the liability of the undersigned shall not be in excess of the sum last mentioned. Any collateral security or pledge which the Bank may hold with respect to any indebtedness at any time owing to the Borrower, the Bank (without in any degree impairing its rights hereunder) shall be at liberty to apply to so much of the indebtedness of the Borrower as shall exceed the sum last mentioned, unless otherwise expressly provided in the agreement of pledge."

In a series of transactions from February 3, 1972 to August 11, 1975, Bank granted loans of $396,000.00 for the notes payable to Bruce Printing in the same account. On October 31, 1973, Cicardi A. Bruce, Jr. and his wife Phyllis, Cicardi A. Bruce, Jr., individually, and Mary Gertrude Boerger, executed a second set of guaranties. The second set of guaranties were identical to the guaranty set out above except the dollar limitation was increased to $375,000.00. Apparently, Bank required increased guaranties because the loans exceeded its original expectations.

By September, 1976, Bruce Printing had defaulted in its obligations to Bank. Subsequent to the default of Bruce Printing, Bank sold various assets of plaintiffs which had been pledged as security for the loans to Bruce Printing in the plaintiffs' guaranties of February 3, 1972 and October 31, 1973.

On April 16, 1977, plaintiffs filed this suit seeking to absolve themselves from any further liability on their guaranties and the trial court issued a temporary restraining order prohibiting further sale of plaintiffs' pledged assets. Although the parties disagree as to the exact amount remaining unpaid on the Bruce Printing loans as of April 16, 1977, the parties agree Bruce Printing remained indebted to Bank on that date. The parties also agree that more than $375,000.00 in interest and principal has been repaid to Bank from all sources. The plaintiffs have paid $241,852.90 of that amount.

Plaintiffs moved for partial summary judgment permanently enjoining defendants from taking any action to sell any property of plaintiffs pledged in connection with plaintiffs' guaranties. Plaintiffs requested a declaration that they have no further obligation to Bank under any of the guaranties. The trial court found payments to Bank in excess of $375,000.00 had been made and thus plaintiffs were entitled to partial summary judgment.

The first paragraph of each guaranty contains the language upon which the plaintiffs' motion and the resulting judgment are based:

". . . the undersigned jointly and severally for themselves, their heirs, executors and administrators, hereby guarantee to said Bank, its successors and assigns, the prompt payment as they may severally mature of any or all loans made, or which may be made, to said Borrower [Bruce Printing] by said Bank, as well as any and all renewals thereof and of all indebtedness that is now or at any time hereafter may be or become owning from said Borrower to said Bank not exceeding in the aggregate $335,000.00 [$375,-000.00]."

In granting partial summary judgment, the trial court held that plaintiffs' liability under the guaranties was extinguished when Bank had received $375,000.00 in repayment, irrespective of the source of the payment. The court, in effect, held that by this language plaintiffs agreed to guarantee only the "front end" of the Bruce Printing indebtedness, and that once Bank had received payments totalling $375,000.00, the plaintiffs' liability was extinguished. Bank contends the language of the guaranties makes each plaintiff liable for the debts of Bruce Printing in case of its default but limits the extent of that liability to the amount owing or $375,000.00—whichever is less. We agree.

■ Contracts of guaranty should be interpreted like other types of contracts. *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo.App. 1977). All terms of the contract should be given effect. *Wilshire Const. Co. v. Union Elec. Co.*, 463 S.W.2d 903, 906 (Mo.1971). Giving the language of the guaranties its natural, ordinary, and common sense meaning, we believe that the particular limitation is applicable only to set the maximum liability of each particular plaintiff regardless of the amount already repaid by the principal debtor Bruce Printing.

While we have discovered no Missouri case directly on point, other courts facing similar language have similarly held. In *Goldman v. Dangerfield*, 101 Cal.App. 67, 281 P. 400 (1929), defendants executed the following guaranty:

"We hereby guarantee payment of all merchandise purchased from Meyer Cloak & Suit Company, and Granada Knit Mills by Mrs. N. L. Stuky of Red Bluff, California, up to the amount of Fifteen Hundred Dollars ($1,500.00)."

The California court held that the guarantors were liable to the extent of the respective guaranties, even though the principal debtor may have, during the existence of the contract of guaranty, contracted debts to an amount greater than the sum mentioned in the guaranty and paid them. The California court further held that if the guarantors wished to limit the amount for which they would be liable to a single transaction or to payment of the "front portion" of any debt, such limitation must be stated in the guaranty. Accord, *State Capitol Bank of Oklahoma City v. Norick*, 550 P.2d 587 (Okl.Ct.App.1976); *Stearns v. Jones*, 138 Tenn. 589, 199 S.W.2d 400 (1917); *First Nat. Bank v. Waddell*, 74 Ark. 241, 85 S.W. 417 (1905).

■ The guaranties presently before us are by their terms continuing. They contemplate a series of transactions between the debtor and creditor, rather than a single debt. The guaranties provide:

"this instrument is intended to be and shall be a continuing guaranty and agreement and shall apply to and cover all loans, discounts or renewals thereof made by said Bank and all indebtedness of any kind due to said Bank from said Borrower prior to notice in writing given to the Treasurer of said Bank by the undersigned that they will not be liable upon any further loans or discounts accepted or indebtedness incurred after the receipt of such written notice."

A continuing guaranty which contains a limitation of the guarantor's liability is not exhausted even though the principal debtor contracts and pays debts equal to or greater than the sum stipulated in the guaranty. *First Nat. Bank v. Waddell, supra; Goldman v. Dangerfield, supra; Stearns v. Jones, supra.*

Finally, the language in the fourth paragraph of the guaranties indicates the dollar amounts in each guaranty was a ceiling on liability of plaintiffs under each contract, to-wit:

"If the indebtedness of the Borrower to the Bank shall at any time exceed the last sum mentioned, this Guaranty shall, nevertheless, extend to and cover the amount of all indebtedness of the Borrower which may at any time exist, but the *liability of the undersigned* shall not be in excess of the sum last mentioned." (Emphasis added.)

We believe that it is important to uphold guaranties like the ones in this case as helpful to commerce. The intent of the parties is clear from the guaranty contracts. Having held the limitation in each guaranty as the ceiling on the liability of the plaintiffs under each contract, we need not review the question of the effect of the execution of subsequent guaranties, in the same form, but with the dollar limitation of $375,000.00.

The partial summary judgment is reversed and remanded for further proceedings consistent with this opinion.

DOWD, P. J., and REINHARD, J., concur.