Filed 6/11/15  Cross Petroleum v. Bal CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Shasta)

----

| | |
|---|---|
| CROSS PETROLEUM, | C075956 |
| Plaintiff and Appellant, | (Super. Ct. No. 167467) |
| v. | |
| RAJINDER SINGH BAL, | |
| Defendant and Respondent. | |

Plaintiff Cross Petroleum appeals from the judgment of the trial court in favor of defendant Rajinder Singh Bal.  In its statement of decision, the court found Bal was neither engaged in a joint venture with codefendants (none of whom are parties to this appeal) who had defaulted on a fuel sales agreement with Cross Petroleum for a gas

1

station that they had operated, nor was Bal liable as a guarantor on the basis of a credit agreement with Cross Petroleum for the benefit of the gas station that Bal had executed a couple of months before Cross Petroleum entered into the fuel sales agreement. After notice of entry of judgment on January 30, 2014, Cross Petroleum filed a timely notice of appeal.

Cross Petroleum contends the trial court erred in finding the guaranty unenforceable for uncertainty. We agree, and shall reverse the judgment with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

Cross Petroleum does not challenge the sufficiency of the evidence to support the statement of decision. We relate the facts in favor of the trial court's findings. (*Swanson v. Skiff* (1979) 92 Cal.App.3d 805, 808.)

Cross Petroleum had an affiliated company that was offering for sale two Chevron stations in Redding in July 2005, selling the fixtures and leasing the land. One was located on Hilltop Drive. Codefendant Khalid Masood, president of K.M. Western Investment Corporation (K.M. Western), had been investigating this business prospect. On July 21, he and Bal had a "meet and greet" with the credit manager for Cross Petroleum and its affiliate company. Bal gave a completed credit application on behalf of K.M. Western to the credit manager. The codefendant Masood was not a signatory to the credit agreement (although he was listed with Bal as a signatory to the credit account); Masood and Bal told the credit manager that while Masood was the one with the experience in operating gas stations (which was important to Cross Petroleum), he had bad credit and Bal was consequently introduced as the "money man." The credit manager did not discuss the provisions of the credit agreement with them.[1] Nonetheless,

---

[1] Bal testified to a different version of events. He claimed he had signed the credit application after codefendant Masood had already filled it in and gave it back to him to send to Cross Petroleum (believing it was for a gas station in another city that they had

2

Bal was an experienced businessman who had previously executed a personal guaranty on behalf of a hotel he had operated in South Lake Tahoe. Bal never had any further direct contact with the credit manager.

The two-page credit application did not include a credit limit or expected monthly purchases, nor did it indicate the type of product to which it would apply or the service station to which the product would be delivered. Bal acknowledged at trial that these figures could not be calculated at that point because it was unknown how much fuel or what type they would be needing for the gas stations. The application specified that billing would be semimonthly, with payment due within 10 days and an annual interest rate of 18 percent on unpaid balances. Bal signed the credit application as secretary-treasurer of K.M. Western, and also identified himself as the bookkeeping contact (although he was not in fact a corporate officer and did not have any connection with its finances). As signatory, Bal "personally guarantee[d] payment of the account notwithstanding the manner or capacity in which I sign my name below and further notwithstanding the status I may have as an officer [etc.]."

Based on Bal's excellent credit rating, Cross Petroleum approved the credit application in mid-August, assigning a $20,000 credit limit. This approval was material to the credit manager's willingness to enter into the property transactions for the two Redding service stations with K.M. Western and a fuel sales agreement.[2] Bal did not play any part in these negotiations. The property transactions took place in mid-September 2005, and Cross Petroleum sent a proposed copy of the fuel sales agreement at about the same time. The executed fuel sales agreement was dated October 1, 2005,

---

considered, for which he would join in K.M. Western), and he had never been to Redding. The dispute is ultimately not material, although the trial court explicitly questioned Bal's overall credibility.

[2] The fuel sales agreement is denominated a "Product Sales Agreement."

which codefendant Masood signed.  It obligated K.M. Western to purchase a minimum of 800,000 gallons of gasoline per month for 10 years.  It also expressly incorporated by reference the previously executed guarantee of Bal.

Two other codefendants entered into partnership agreements with codefendant Masood in 2005 and 2007 to operate the Hilltop service station and purchase ownership shares (neither agreement identifies anyone else with an interest in the business).  The credit manager at some point increased the credit limit to $40,000.  Unaware that Bal was not involved in the operations of K.M. Western, the credit manager continued to send invoices and communications to his attention.[3]  The Hilltop service station went into default in July 2009.  It is not disputed that damages and interest for unpaid fuel amounted to more than $75,000, and liquidated damages on unpurchased fuel were over $221,000.

Cross Petroleum filed its complaint for breach of contract and common counts in October 2009.  Eventually, a bench trial was scheduled for March 2013.

Cross Petroleum filed a voluntary dismissal of one codefendant before trial, who had been the person actually operating the station after March 2007 and who had died before trial.  At the start of trial, codefendant K.M. Western ("an empty shell that [does not have any] assets") consented to entry of a default judgment against it.  The parties also stipulated to the dismissal of codefendant Masood (who had successfully discharged

---

[3]  Having made this misrepresentation in the credit agreement, it ill-behooves Bal to complain about a lack of notice of the subsequent increase in the credit line that Cross Petroleum extended to K.M. Western.  Moreover, a creditor is not even obligated to provide notice of subsequent transactions unless it has reason to believe that they do not come within the contemplation of the guaranty.  (*Sumitomo Bank of California v. Iwasaki* (1968) 70 Cal.2d 81, 92-94; 23 Williston on Contracts (4th ed. 2002) Suretyship and Guaranty, § 61:45, p. 164 (Williston).)  As we discuss subsequently, this latter principle would be material only to Bal's claim of exoneration that the trial court did not expressly consider.

4

the debt to Cross Petroleum in bankruptcy). The other remaining codefendant appeared at trial in propria persona.

After the parties filed their responses to its tentative decision, the trial court issued its statement of decision in September 2013. It concluded the surviving codefendant had been part of a joint venture with K.M. Western, and entered judgment against both the defunct corporation and him for the damages. However, the court did not find sufficient evidence that Bal was a participant in the joint venture[4] (leaving unexplained why Bal would knowingly offer a bona fide guaranty to K.M. Western on behalf of a person who was simply a friend of his father-in-law). It found the guaranty in the credit application to be "vague and ambiguous and therefore unenforceable" about the obligations Bal was undertaking, and unconscionable to the extent it could be construed to apply to the terms of a fuel sales agreement that were not yet in existence (and as a result "could [not] have been reasonably anticipated"). The trial court declined to find promissory estoppel against Bal (as a result of his misrepresentations) because the vague nature of the guaranty did not make any reliance on the part of Cross Petroleum reasonable.

**DISCUSSION**

California law does not distinguish between surety and guaranty contracts; both involve "one who promises to answer for the debt . . . of another." (Civ. Code, § 2787;[5] *Bloom v. Bender* (1957) 48 Cal.2d 793, 797.) We accordingly will employ the latter term. Guarantees are interpreted according to general contract law; the extent of liability on the guaranty is derived from the language used in light of the circumstances of the

---

[4] Cross Petroleum persists in characterizing Bal as a "joint venturer" without tendering any *argument* challenging the trial court's finding to the contrary. ("This appeal is taken *only* as to the trial court's failure to find against Bal on his personal guarantee," italics added.)

[5] Undesignated statutory references are to the Civil Code.

5

transaction.  (§ 2837; Rest.3d Suretyship and Guaranty, § 14, p. 69).  In *general*, a contract that leaves an essential term for later establishment is usually held unenforceable for uncertainty, though the "modern trend" attempts to limit this principle to situations where a court simply *cannot* determine what to enforce.  (*Okun v. Morton* (1988) 203 Cal.App.3d 805, 817.)  This appears to be the principle on which the trial court understandably relied.  The problem, however, lies in applying this principle to the type of guaranty at issue in this case that in essence offers standing credit to a principal.

Guarantees can be either limited or continuing.  (*Central Building, LLC v. Cooper* (2005) 127 Cal.App.4th 1053, 1059 (*Central Building*); see *id*. at p. 1060 [example of limited guaranty]; 38 Am.Jur.2d (2010) Guaranty, § 17 ["restricted" vs. continuing guaranty].)  A contract will be construed as a continuing guaranty where it is evident from the language and circumstances that the object is to give standing credit to a principal for future liability under successive transactions with a creditor, and absent any words of limitation it remains in effect until revoked.  (*Berg Metals Corp. v. Wilson* (1959) 170 Cal.App.2d 559, 569-570 (*Berg*); *Goldman v. Dangerfield* (1929) 101 Cal.App. 67, 73-74, 74-75 (*Goldman*); *Kierulff & Ravenscroft v. Koping* (1928) 94 Cal.App. 473, 479 (*Koping*); § 2814; 59 Cal.Jur.3d (2012) Suretyship and Guaranty, § 10, pp. 21-22; 23 Williston, *supra*, § 61:45, p. 164.)  "While in some cases, [a guaranty] is for specific, identifiable obligations . . . planned for the future, it is also possible for a person to agree to *a more open-ended obligation* pursuant to which *unspecified future obligations are covered. . . .*  Under [such a] contract, the continuing guarantor agrees to serve as a secondary obligor for *all* future extensions of credit to the principal obligor until the guaranty is terminated."  (Rest.3d Suretyship and Guaranty, § 16, com. a, p. 75, italics added.)  "A continuing guaranty covers all transactions, *including those arising in the future*, that are within the contemplation of the [guaranty] agreement."  (38 Am.Jur.2d, *supra*, Guaranty, § 17, italics added.)  In cases of ambiguity, there is a

6

presumption against construing a guaranty as continuing (*Goldman*, *supra*, 101 Cal.App. at p. 73), but a guaranty for all goods purchased for a business with an ongoing need for additional goods is unambiguously a continuing guaranty (*id*. at p. 74; *Standard Oil Co. v. Houser* (1950) 101 Cal.App.2d 480, 487 (*Standard Oil*) [guaranty of "all plaintiff's charges for the account of" creditor, rather than any specific contract, is continuing guarantee]; *Sopris v. Continental Mfg. Corp.* (1935) 6 Cal.App.2d 416, 419 (*Sopris*) [a "blanket guaranty" for the costs of up to 50,000 units that antedated sales contract is a continuing guaranty of all subsequent transactions up to that amount].)

As with a court's general approach to contractual uncertainty—in which it resorts, if possible, to usual and reasonable terms found in similar contracts (*Magna Development Co. v. Reed* (1964) 228 Cal.App.2d 230, 236)—for a continuing guaranty of unspecified future obligations, it is implied "that its terms shall be such as will not expose the surety to greater risks than [those] incur[red] under . . . terms which are most common in similar contracts at the place [of performance]." (§ 2799; see *Knox Glass Bottle Co. v. Golden Gate Liquor Co.* (La.Ct.App. 1937) 174 So. 684, 688 [if amount of liability or duration not specified, must be that which is reasonable under circumstances (citing black letter law)].)

Thus, Bal and the trial court both go astray in imposing a standard of certainty regarding the terms *of future transactions* on a continuing guaranty. It is not surprising that we have been unable to find in the jurisprudence of any jurisdiction a case that found a guaranty to be continuing but invalid as "uncertain" because the future terms had not yet been set; this is antithetical to the notion of an offer of standing credit. While Bal points to the *circumstance* in a number of the above cases that a guarantor had past dealing with the principal and creditor (or the terms for the future agreement were already under consideration), this was neither an express nor necessarily implicated part of their

7

ratio decidendi and thus outside the holdings of these cases. (*People v. Oehmigen* (2014) 232 Cal.App.4th 1, 8.)

Bal, an experienced businessman, could have limited his total liability on his personal guaranty (regardless of the amount of credit Cross Petroleum agreed to extend) without affecting its continuing character. (*Berg*, *supra*, 170 Cal.App.2d at p. 571; *Bank of America etc. Assn. v. Sage* (1936) 13 Cal.App.2d 171, 175; *Goldman*, *supra*, 101 Cal.App. at p. 74; *Koping*, *supra*, 94 Cal.App. at p. 479; *Lean v. Geagan* (1912) 20 Cal.App. 260, 261-262.) He did not. Therefore, as in *Standard Oil* (where at the time of the guaranty "no sale or contract of sale of gasoline had been made and the credit cards had not been issued"), "[*t*]*he quantities, prices, and terms* of the agreements of [the future] sale[s] . . . were of no concern to defendant since he guaranteed payment of *all goods* sold to Eagle on credit." (*Standard Oil*, *supra*, 101 Cal.App.2d at p. 487, italics added; accord, *Sopris*, *supra*, 6 Cal.App.2d at p. 419 ["blanket" guaranty of cost of up to 50,000 units].) This is in accord with section 2799's provision for an acceptable level of uncertainty as to future terms. The credit application was not idiosyncratic; it was a form application that a local fuel supplier used in connection with the customary delivery of its product to gas stations, and Bal has not pointed us to any evidence that the risk to him in guaranteeing payment for fuel deliveries on unspecified terms was out of the ordinary. We therefore find the continuing guaranty in the credit application was not invalid as uncertain in light of section 2799 (and thus not unconscionable) because it did not incorporate the specific terms of the fuel sales agreement that followed.

The proper focus at trial should have been whether the terms of the *subsequent fuel sales agreement* were *in fact* material alterations Bal could not have reasonably anticipated at the time he guaranteed payment for fuel deliveries, and thus *exonerated* his guaranty as a result. (§ 2819; see *Central Building*, *supra*, 127 Cal.App.4th at pp. 1060-1061 & fn. 8). Exoneration is an affirmative defense (*Alexandrou v. Alexander* (1974)

8

37 Cal.App.3d 306, 315) that Bal included in his answer (albeit obliquely) and raised (in at least a cursory manner) in his trial brief, but it was not an express part of the statement of decision.[6]

Bal argues that we should affirm the judgment on the basis of the exoneration of his guaranty. He contends (in abbreviated fashion) that terms of the fuel sales agreement eliminated "certain" (unspecified) remedies of his principal, and contained credit terms at variance from those specified in the credit application. He fails, however, to connect these changes with *evidence* in the record of material detriment on his part, or evidence establishing that these terms in the fuel sales agreement were contrary to his reasonable expectations. We will not independently examine the record for him. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 89.) He certainly has failed to establish on appeal that we should find him entitled to entry of judgment in his behalf on this basis *as a matter of law*.

We will therefore reverse the judgment with directions for the trial court to determine whether Bal is entitled (as a matter of pleading and producing evidence) to exoneration. In its discretion, it may receive additional evidence on this issue if it finds the failure to produce evidence was excusable.

## DISPOSITION

The judgment is reversed with directions to the trial court to consider expressly whether Bal is entitled to the affirmative defense of exoneration, and to take any

---

[6] Cross Petroleum has suggested that analytically the defense of exoneration does not have any application to a continuing guaranty, which can be terminated prospectively at any time. However, Cross Petroleum does not provide any authority that *precludes* the defense for continuing guaranties.

additional evidence it determines in its discretion to permit.  Neither party shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (5).)


                                                BUTZ , J.


We concur:


 RAYE , P. J.


 NICHOLSON , J.


10