[Civ. No. 6492. First Appellate District, Division One.—June 21, 1929.]

EDWARD ACKLEY, Respondent, v. SPENCER G. PRIME, Appellant.

536

William F. Herron for Appellant.

Franklin T. Poore for Respondent.

THE COURT.—This is an action to recover upon three assigned claims for money had and received, each claim being made the subject of a separate count in the complaint, the first of which was dismissed. The second and third counts are based upon allegations to the effect that defendant received from Samuel R. Allan and Charles Hammer, respectively, the sums of $365.55 and $477.55 to and for the use of the Morton Hospital, a corporation, but refused to pay any part thereof to said corporation or to plaintiff. The trial resulted in a judgment in favor of plaintiff and the defendant appeals, the sole ground urged for reversal being that the evidence fails to establish a cause of action for money had and received; that defendant's liability, if any, was upon a written contract of guaranty, and that plaintiff's action should have been founded thereon.

It appears that defendant, as attorney for Allan and Hammer, instituted two actions in their behalf to recover damages from the Remington Typewriter Company on account of personal injuries sustained by them in an automobile collision. The injuries necessitated hospital treatment, which was furnished by the Morton Hospital under the following circumstances, as the same were established by the testimony of three members of the hospital staff, namely Drs. Gardner and Morton, and Edith Barnett, the superintendent: Defendant, after explaining the circumstances under which the men were injured, and that as their attorney he had instituted actions for the recovery of damages, agreed that if the hospital management would receive the men and furnish them with necessary hospitalization he would pay the cost thereof out of the money received in said lawsuits, and would be "personally responsible" for such payment. Under such agreement the men were admitted to the hospital and after being treated there for a short time Dr. Morton requested defendant to "confirm" his agreement in writing, which the defendant did, the letter to that effect reading as follows:

"March 21st, 1924.

"Supt. Morton Hospital,
    "1055 Pine Street,
        "San Francisco, Calif.

"Dear Sir: You have in your hospital as patients, Samuel R. Allen and Charles Hammer, both suffering from injuries as a result of automobile accidents and said cases are under the personal supervision of Doctor George Gardner. Actions for damages in each of the foregoing cases have been filed against alleged persons causing the injuries, and I am the attorney of record representing the persons herein named. As these cases were placed in your hospital as a result of my solicitation, I wish by this letter to guarantee to your institution the payment of the necessary indebtedness in the case and treatment of both Allen and Hammer and services in connection therewith. Both of these cases are being defended by Insurance Companies, as a result of Policies for Liability issued to the Owners of the Automobiles causing the injuries.

"Very truly yours,
"Spencer G. Prime."

Thereafter the men remained in and were treated at the hospital until they recovered from the effects of their injuries. Eventually Allan's case against the typewriter company was settled for $2,500, and a check for that amount was made payable to defendant and Allan jointly, and delivered to defendant. After certain expenses were deducted and Allan was paid his share of the settlement defendant retained for himself approximately $1240, but he refused to pay any part of Allan's hospital bill. Before Hammer's case was brought to trial a disagreement arose between Hammer and defendant, which resulted in a substitution of attorneys, defendant being succeeded by attorney Reed M. Clarke. The case was afterward brought to trial and a judgment obtained for $13,000. Thereupon two attachments were levied against the judgment. One was issued in an action brought by the defendant Prime against Hammer to recover attorney's fees. The other was issued in an action commenced in the name of the Morton Hospital against Hammer to recover the amount of the latter's hospital bill. The plaintiff in each action was represented by Attorney Herron. Subsequently a settlement was made in each case.

Prime received a "substantial sum" in payment of his claim for attorney's fees, the amount not being disclosed by the record; and the full amount of the hospital demand, amounting to $488.84, was paid by check drawn in favor of and delivered to Mr. Herron, who subsequently cashed the same. However, no part of the money received on said check was ever paid to the Morton Hospital. In this connection Mr. Herron testified that the failure to pay the money to the hospital was due to the fact that Dr. Morton was absent in Europe for several months, that he had always kept the money for him, and had never paid any part of it to Mr. Prime. At the time the check was delivered to Mr. Herron the indorsement thereon read: "In full of all demands in that said action entitled Morton Hospital, Plaintiff, vs. Charles Hammer, Defendant, pending in the Superior Court of S. F. No. 152,192, in which action payee is attorney for plaintiff." Defendant admits that he engaged the services of Mr. Herron to commence the action on behalf of the hospital against Hammer, but claims that Dr. Morton authorized him so to do. This latter statement was contradicted by Dr. Morton. He testified in substance that defendant, after having obtained a statement of Hammer's account from the hospital, caused said action to be instituted on his own initiative, in order to protect himself under his promise to the hospital to stand personally responsible for the cost of Hammer's treatment; and that after the attachment had been levied the defendant informed him that there would be no charge against the hospital for making the collection. Mr. Herron testified that he commenced the action without knowing who had engaged his services; that he got his authority from the papers which were left in his office, the complaint having been verified by Dr. Morton; that he did not know whether his own clerk or someone else's brought the papers to his office; and that he had never seen Dr. Morton prior to the day on which the present action was tried. In view of the foregoing conflict it must be presumed on this appeal that the trial court accepted as true the testimony of Dr. Morton and concluded therefrom accordingly that so far as Mr. Herron's services were concerned he was acting as defendant's agent and not for the hospital; and that, consequently, under the general rule declaring that "where one is retained as an attorney, or who undertakes to

perform an act which requires an attorney, himself engages an attorney to perform the act, the latter is but a sub-agent and the relation of attorney and client does not subsist between him and the original employer'' (6 Cor. Jur. 631), defendant was primarily responsible also for the money collected by Mr. Herron.

It would appear, therefore, that the money thus coming into the hands of the defendant and his agent as a result of the settlements obtained in said lawsuits was sufficient to cover the cost of hospitalization of the defendant's clients and that in equity and good conscience it belonged to the hospital, and was being withheld at the time of the commencement of this action. Under such circumstances it has been held that an action for money had and received will lie (*M. H. Hoffman, Inc.,* v. *Bernstein Film Productions,* 42 Cal. App. 12 [183 Pac. 293] ; *Fox* v. *Monahan,* 8 Cal. App. 709 [97 Pac. 765]).

Aside from the foregoing view, however, and even assuming it to be the law as defendant contends, that an action for money had and received cannot be maintained where it appears that the defendant's liability is a secondary one only, arising out of a special contract of guaranty, we are of the opinion that the evidence here does not establish such a contract. With reference thereto section 2794 of the Civil Code provides that a promise to answer for the obligation of another is deemed an original obligation of the promisor and need not be in writing where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety; and in this connection it has been held that whether or not the promise is original or collateral is a question of fact (*Harris* v. *Frank,* 81 Cal. 289 [22 Pac. 856] ) ; or in case the negotiations of the parties are incorporated into an unambiguous written contract it is for the court to determine; and that the solution of the question is dependent largely upon a determination of whether the direct and leading object of the promise is to become liable upon the default in the performance of another, for the payment of another's debt, or whether such object is to subserve some purpose of the promisor although the effect

is to pay the debtor's obligation (*Clay* v. *Walton*, 9 Cal. 328; 13 Cal. Jur. 87).

██ The facts of the present case, when construed in the light of the authorities above cited, are amply sufficient to support the conclusion that the object of defendant's promise to the hospital was not, as defendant contends, to incur a secondary liability to pay for the care of his injured clients in the event only that they defaulted in making such payment, but that his intention was to create a primary liability to pay for the same out of the proceeds to be received from said lawsuits, in conformity with an agreement he had made with his clients to that effect; and that the hospital management so understood it. ██ And the circumstance of defendant having used the word "guarantee" in said letter or elsewhere during the making of the agreement does not alter the situation because, as has been held, the use of such word does not in itself import a contract of guaranty, it being frequently used in the sense of promise or agree, etc., importing an original obligation on the part of the person executing the same (*Meyer* v. *Moore*, 72 Cal. App. 367 [237 Pac. 550]; 13 Cal. Jur. 87); and when the context of the letter is considered along with the oral testimony relating to the making of said agreement it becomes apparent at once that defendant intended to be understood as incurring a primary responsibility, and that it was upon the strength of such primary responsibility that the credit for the hospitalization of Allan and Hammer was extended.

██ Even though a strained construction of the evidence be given, and it be held that the transactions relating to said agreement constituted a special contract of guaranty and that plaintiff's remedy was restricted to an action founded thereon, it is plain to be seen that since neither of the original debtors have paid the debts defendant "guaranteed," the bringing of an action for the enforcement of the contract of guaranty would necessarily result in a judgment in favor of plaintiff. That being so, a reversal of the present judgment is not warranted, for as said in California Jurisprudence (vol. 17, p. 632), where it is shown that the money sued for is admittedly due, the defense that the complaint for its recovery should have declared upon a special contract instead of upon common counts "is a technical one and in view of section 4½ of article VI of the Constitution

a judgment for plaintiff on the common count will not be reversed on the ground that there is an executory written contract between the parties where the result would not be changed by sending the case back for a retrial on other pleadings.'' (Citing *M. H. Hoffman, Inc.,* v. *Bernstein Film Productions, supra.*)

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 19, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 19, 1929.

All the Justices concurred.