[Civ. No. 9606. First Appellate District, Division One.—December 16, 1935.]

ZELLERBACH PAPER COMPANY (a Corporation), Appellant, v. VIRDEN PACKING COMPANY (a Corporation), Respondent.

Philip S. Ehrlich and Albert A. Axelrod for Appellant.

James, Brann & Rowe for Respondent.

McNUTT, J., *pro tem.*—Zellerbach Paper Company sued Virden Packing Company as upon a continuing guaranty of

credit extended by the former to Pioneer Fruit Company for goods sold by Zellerbach to it. Judgment went for defendant and plaintiff appeals. Each of said companies is a corporation. The Virden Company and the Pioneer Company had a common president in Charles E. Virden, who was as well general manager of the packing company, and for many years the packing company owned the capital stock of the fruit company, after which Mr. Virden became the owner thereof. The packing company and the fruit company were customers of plaintiff; the Pioneer had been purchasing large quantities of wrapping materials without uniformity in point of quantity or price of the successive individual invoices.

The complant alleges that on May 26, 1927, the Pioneer was indebted to the Zellerbach Company in the sum of $16,664.39 for a balance on an open book account for merchandise sold the fruit company; that said account was past due; that Pioneer desired further credit from the paper company and in consideration thereof the Virden Company agreed to guarantee payment of the fruit company's then existing indebtedness and such additional credit as Zellerbach Company might extend to the fruit company; that the guaranty was executed and that the Virden Company had never revoked it; that relying upon the guaranty, the paper company extended further credit to the fruit company, selling it merchandise up to more than $85,000; that prior to suit, the original indebtedness had been paid by the purchaser fruit company as had sums upon the total amount of purchases, so that at the commencement of the action there was unpaid $21,000 plus, together with interest, or a total of $25,270.85; that demand had been made by the paper company upon the Virden Company for this sum, followed by the latter's refusal of payment.

The answer denied the allegations of the complaint and also denied that C. E. Virden, president of the packing company, had authority to execute the alleged guaranty; that the so-called "guaranty" was not such, but was rather an offer of guaranty; and that, if it were a guaranty, it was not a continuing one but merely that of the original unpaid balance of $16,000.

Mr. Anderson, credit manager of the paper company, says that in May, 1927, he called Mr. Virden's attention to the fruit company's balance to the paper company, and suggested

that the packing company guarantee the account; that at first he demurred but finally agreed to give appellant the desired guaranty when the latter, through Anderson, informed him that otherwise it would furnish the fruit company with no more wrapping paper. Though Mr. Anderson's recollection was confused, the evidence shows that he prepared an instalment note for $16,825.08, providing for an initial payment on June 18, 1927, intermediate payments, and the final payment August 18, 1927, and sent the same to the fruit company to which was attached the following memorandum (instrument in suit): "May 26th, 1927. Zellerbach Paper Company, San Francisco, California. Gentlemen: In consideration of our interest in the Pioneer Fruit Company and your extension of additional credit to them and your forbearance on their present indebtedness to you, we hereby guarantee the payment of said indebtedness and the additional credit extended by you, and agree to execute a suitable form of guaranty evidencing this agreement. Yours very truly,". The note signed by Pioneer and endorsed by the packing company, through its president, Charles E. Virden, was delivered to the paper company minus the attached memorandum, and, in consequence, under date of June 3d, the paper company, through Anderson, wrote the fruit company, "Attention Mr. J. H. Mann", the following letter: "Gentlemen: We acknowledge receipt of and thank you for your June 2nd letter enclosing note $16,825.08 which bears the endorsement of Virden Packing Company, Chas. E. Virden, President. At the time we offered to accept this note we forwarded to you for signature of the Virden Packing Company a memorandum which they were to sign setting forth their interest in endorsing the note of the Pioneer Fruit Company. Will you please have this signed memorandum returned to us for our files." Virden signed the name of respondent by himself as president to the instrument above set forth, placed the corporate seal thereon, and transmitted same to the paper company. The complaint herein was filed June 6, 1932, and it is for goods sold on credit to the fruit company during 1929 and 1930. The trial court found that the transactions in suit were not covered by the so-called "guaranty" of May 26, 1927.

Appellant contends that the instrument is a continuing guaranty, always in force because unrevoked; that it, *prima facie*, bound the respondent because executed by its president,

and was impressed with a corporate seal; that the evidence shows actual *and* ostensible authority in Mr. Virden to execute said contract; that the trial court erred prejudicially in ruling upon certain proffered evidence. Scrutiny of the record impels the conclusion that the judgment should be affirmed, and that some of the propositions advanced are opposed to the evidence.

The stock distribution of respondent shows that it was not a one-man corporation and that, hence, the *alter ego* doctrine is inapplicable; further, that the mechanics of nominating directors, under the amended by-laws, by a nominating committee, was neither calculated nor employed to set up a one-man control through the medium of what is sometimes called a biddable board of directors. At a meeting held for that purpose the by-laws of the packing company were amended December 5, 1919 (Rep. Trans., p. 394), so that a nominating committee was created to report to the annual meeting of the stockholders nominees for the office of director. In the preparation of such list the committee was to select such nominees as, in their judgment, would be for the best interests of this corporation and its stockholders. "Nothing herein contained shall be construed as preventing any stockholder from voting his stock in this Company for any stockholder he may desire elected to serve as a director". The deduction that this committee was in any manner hindered in the free exercise of its own judgment, either through the use by Mr. Virden of his own stock or through proxies is unwarranted.

At one place in the brief appellant suggests "that there never was a clearer case of ostensible authority proved, but we further say that not only was there ostensible authority but that there was actual authority" to execute the instrument. At another place: "If there was no express authority for Mr. Virden to make the loans which he made and to guarantee the indebtedness of Pioneer Company, certainly there was actual *and* ostensible authority in view of the fact that Mr. Virden over a period of some twelve years was permitted to handle financial transactions between the two companies (between Pioneer Fruit Company and Virden Packing Company) involving over a million dollars, with which transactions the directors apparently seem not to be concerned". As authority for the unwarranted deduction of

ostensible agency in the president of respondent, appellant relies upon *Mahoney Mining Co.* v. *Anglo-California Bank,* 104 U. S. 192, at 194 [26 L. Ed. 707, at 708], quoting as follows: "And it is settled law that the existence of such authority in subordinate officers may, in the absence of expressed statutory prohibition, be shown otherwise than by the official record of the proceedings of the board. It may be established by proof of the course of business between *the parties themselves;* by the usages and practice which the company may have permitted to grow up in its business; and by the knowledge which the board charged with the duty of controlling and conducting the transactions and property of the corporation, had, or must be presumed to have had, of the acts and doings of its surbordinates in and about the affairs of the corporation". (Our italics.) (Citing to the same effect *Betts* v. *Southern Cal. etc. Exchange,* 144 Cal. 402, at 407 [77 Pac. 993], and *Stevens* v. *Selma Fruit Co.,* 18 Cal. App. 242, at 251 [123 Pac. 212].)

The Mahoney case, *supra,* presents no analogy to the facts at bar. Therein a mining company had for years carried its account with its treasurer, the Anglo Bank, making deposits therein, which were paid out on checks signed by the president and secretary of the mining company, the bank meanwhile allowing overdrafts on like checks. Such overdrafts with interest amounted, on June 21, 1877, to some $6,000. In the morning of said day, in an action pending before the District Court in the City and County of San Francisco in which the stockholders of the mining company were plaintiffs and the mining company and its board of directors were defendants, looking to the removal of the directors from office, the decision was announced ousting them. The decision was not filed until June 22d. On the afternoon of the 21st the board so ousted, on learning from the president of the overdraft at the bank, adopted a resolution authorizing the president and secretary to execute a note on behalf of the company running to the bank to cover the overdraft. The board, when so acting, had no notice of the decision. The suit was to recover the amount of the overdraft. Naturally in this *inter partes* suit the holding above set out was made because the bank was right in indulging the assumption of the authority which the officers of the mining company ostensibly had by reason of the course of conduct involved. The Betts and

the Stevens cases involve kindred situations, while at bar the appellant paper company had never heard, until after the execution of the instrument in suit, of any of President Virden's unwarranted activities (if any), and counsel below so stipulated. (Rep. Trans., pp. 431 and 498.)

The presence of the corporate seal is merely presumptive evidence of authority in Virden. Under the by-laws the president did not have authority to execute the document, hence, there was no actual authority. Under the evidence there was no ostensible authority. Appellant argues, however, that the president had actual authority, and would seem to base the argument upon the proposition that, prior to the execution of the instrument, the board of directors had passed a resolution authorizing the president, C. E. Virden, to make loans and advances to the Pioneer Fruit Company as and when he might see fit, not however, to exceed a hundred thousand dollars at any one time. We do not feel, however, that such specific authority was intended to or that it did authorize the president to guarantee the credit of the Pioneer Fruit Company without limitation as to time or as to amount. Further, appellant argues that because the president of the packing company had aided the Pioneer Company with his corporation's funds by loans and by trade acceptances up to more or less a million dollars, that the board must be presumed to have had knowledge of Virden's acts and by a process of indulgence authorized them. This view is not tenable because, notwithstanding the board ratified acts of Virden in overloaning company funds to the Pioneer, it did not forgive any debts but rather took secured notes from Pioneer to cover the amount. (Rep. Trans., p. 444 et seq.)

No merchandise was ever sold by the Virden Company to the fruit company and hence when the Virden Company drew trade acceptances which were accepted by the Pioneer and discounted on its own endorsement by the packing company genuine mercantile transactions were not involved but none of these activities was known to the appellant when this so-called "guaranty" was executed. Furthermore, this method of financing was authorized by resolution of the packing company. Reduced to its lowest terms appellant's argument seems to be that, if a president ever exceeds the authority which is conferred upon him in respect to a particular loan and the principal ratifies it and by resolution directs him

never to do it again that actual authority is conferred upon him to repeat the act, because the board of directors did not discharge him; all in the face, however, of the complete ignorance in the third party of the internal relations and workings of the corporation involved.

■ Appellant says that the case should be reversed because the trial court permitted in evidence the by-laws of respondent to show absence of authority in its president to execute the guaranty. If this were a case that warranted reliance upon the doctrine of ostensible authority it would be correct, but actual authority or its absence may be shown by by-laws as by the minutes of the company. Furthermore, the evidence in this case indicates, as will be shown later, that knowledge of the instant transaction was never brought by appellant to the respondent corporation as such, but only to the president personally.

The cases cited by appellant are not analogous to the situation at bar. *Newton* v. *Johnston Organ & Piano Mfg. Co.,* 180 Cal. 185 [180 Pac. 7], holds that the ostensible authority of the agents of a corporation to contract for the services of employees of the corporation, cannot be overthrown by mere proof that the by-laws or minutes of the company failed to disclose actual authority in the president and secretary to contract. The facts make a clear case of ostensible authority and, in addition, the one relying thereon had received replies from telegrams directed to the corporation. The court says, referring to the acts of the president and the secretary, that they generally held themselves out as authorized representatives of the corporation in such manner that the corporation and its directors could not well have been ignorant of their assumption of ostensible power.

*Anglo-Californian Bank* v. *Grangers' Bank,* 63 Cal. 359, holds that the power of corporations to make by-laws for the transfer of their stock does not include the power to create liens thereon affecting purchases for value, without notice.

*Mancini* v. *Patrizi,* 110 Cal. App. 42, at 45 [293 Pac. 828], holds that by-laws cannot be invoked against third persons, and that by the issuance of a stock certificate in regular form, a corporation is estopped against a *bona fide* purchaser, without notice of facts, even to assert that the certificate had been fraudulently issued; while *Aitken* v. *Stewart,* 129 Cal. App 38, 45 [18 Pac. (2d) 988], holds that a note and deed of

trust, not against public policy or legally obnoxious, but merely *ultra vires* the power of the corporation as prescribed by its charter is a defense looked upon with disfavor by courts, and that a complaint which alleged that the same were in excess of the by-laws, and which failed to state that the defendant had notice of the requirements, did not state a cause of action.

It would appear that no director of the Virden Company' had any knowledge of this guaranty until after the Pioneer's bankruptcy; that it nowhere appeared upon the books of appellant or upon either the corporate records or books of account of Virden as a contingent liability.

*Ogburn* v. *Travelers Ins. Co.*, 207 Cal. 50 [276 Pac. 1004], holds that "in the interpretation of a written instrument the primary object is to ascertain and carry out the intention of the parties thereto", citing cases, which rule finds recognition in section 1636 of the Civil Code, and it quotes section 1648 of said code as follows: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." Guaranties as contracts are subject to no different rule of interpretation. They should not be construed with technical care because they are usually drawn by laymen, as it is conceded this contract was, but "according to the facts and circumstances accompanying the transaction, holding in view as the main object to ascertain and effectuate the intentions of the parties". (*First National Bank* v. *Bowers*, 141 Cal. 253, 262 [74 Pac. 856].)

■ Appellant contends that a guarantor desirous of limiting his responsibility to a single transaction should do so in plain and unmistakable terms and upon failure, where unequivocal language supports the inference that the guarantee has been induced by the instrument to extend credit in the belief that it covered more than one transaction, the guarantor should be held to the consequences of his omission. *Rindge* v. *Judson*, 24 N. Y. 64, *City Nat. Bank of Poughkeepsie* v. *Phelps*, 16 Hun (N. Y.), 158, *Kierulff & Ravenscroft* v. *Koping*, 94 Cal. App. 473 [271 Pac. 353], and *Goldman* v. *Dangerfield*, 101 Cal. App. 67 [281 Pac. 400], holding that, unless the words in which a guaranty is expressed fairly imply that the liability of the guarantor is to be limited, it is

generally regarded as continuing until the guaranty is revoked.

The cases of *Kierulff & Ravenscroft* v. *Koping* and *Goldman* v. *Dangerfield, supra,* relied upon by appellant, are unequivocal guaranties of additional credit in respective stated amounts. However, we find in the Goldman case on page 73 the following quotation from 13 California Jurisprudence, page 95: " 'Whether or not a guaranty is continuing must be determined from the language of the instrument, or in case of an ambiguity, by resort to parol evidence of the situation surrounding all the parties, and the guaranty interpreted in the light of such circumstances. The tendency of the decisions in this country, however, has been against construing guaranties as continuing, unless the intention of the parties is clearly manifested so that if there is any doubt as to what was intended, the presumption is against holding the guaranty to be continuing.' "

Against this respondent urges that the use of the word "guaranty" does not, of itself, make the instrument such. *Ackley* v. *Prime,* 99 Cal. App. 534 [278 Pac. 932], and *Gard* v. *Stevens,* 12 Mich. 292 [86 Am. Dec. 52], wherein it is held that a person, out of regard to his own interest, is not to be presumed to have become a surety for another without limitation as to time or as to amount unless he had done so in express terms or by clear implication, but where there is no limitation as to either, and there is nothing in the instrument from which it can be inferred that the guarantor intended to leave it open as to both, it must be understood to refer to a single transaction. This instrument does refer to additional credits as being guaranteed, but from the conduct of the parties about to be adverted to, together with that clause in the instrument which purports to bind the Virden Packing Company to execute a formal document to carry out the purposes of the one in suit, the inference seems irresistible that the parties to this transaction never intended that the Virden Packing Company was to be the everlasting guarantor without limitation in point of amount of credits to be extended by appellant to the Pioneer Fruit Company.

Appellant argues that the fact that the parties may have contemplated the execution of a formal instrument at some later date as evidence of their agreement does not necessarily imply that they had not bound themselves by a present con-

tract, citing *Willey* v. *Goulding*, 99 Kan. 323 [161 Pac. 611], and other cases. But the application of this principle must be considered in the light of the conduct of the parties at bar which indicates that they never had considered their rights as crystallized in the original document as indicating a guaranty for all time until revoked, and, further, the omission of the paper company to demand the execution of such document to be met by refusal on the part of the packing company. (*Levin* v. *Saroff*, 54 Cal. App. 285 [201 Pac. 961].)

Anderson, credit manager of appellant, deposed to the effect that Mr. Virden drew the guaranty and that the same was given to appellant before it had the note of the Pioneer, endorsed by the Virden Packing Company, to cover the then balance. Upon the trial it was shown that Mr. Anderson, not Mr. Virden, drew the instrument, and that the endorsed note was in his company's hands before the alleged guaranty was received. Anderson testified that when, after the receipt of the instrument in suit, the Pioneer company again fell upon lethargic ways in point of meeting its obligations, that he, accompanied by Mr. Finnerty of his company, called upon Mr. Virden and drew to his attention the Pioneer's nonpayment of its debts, that Mr. Virden said, "You need not worry because you hold the Virden Packing Company's guaranty." Memoranda of conversations with Virden were produced, none of which showed that such suggestion had been made by Mr. Virden. From time to time during the whole course of their business transactions calls were made upon Virden, numerous letters addressed to him and to the Pioneer by the Zellerbach Paper Company, none of which refers to any guaranty, but all of which indicate the purpose to have Mr. Virden personally endeavor to have the Pioneer meet its obligations. Effort was made to have Mr. Virden cause the Virden Packing Company to endorse notes of Pioneer that were given to the appellant, but without success, and that appellant did not seem to regard this instrument as a guaranty by the packing company may be fairly inferred from the letter of August 30, 1929, by appellant to Mr. C. E. Virden, marked "Personal". (Rep. Trans., p. 245.) "Dear Mr. Virden: I thought you would be interested in knowing the status of the note account with Pioneer. During the month of August we received two payments $2500 each on this note. The balance still due thereon is $7500, and we feel now that the season is well under

way that this Department of your business should carry out their agreement with us. All of the remaining installments totaling $7500 are long overdue; in fact, the note would be paid in full had the additional extension which we granted been carried out according to its terms. Will you please see that we are not overlooked any longer. Very truly yours, Zellerbach Paper Company by P. H. Anderson, Credit Manager.'' The note which they were addressing Mr. Virden on was for $25,000, covering a balance due December 31, 1928, from Pioneer Fruit Company to the paper company.

This correspondence appears at pages 222, 224, 228, 229, 236, 237, 238, 239, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251 and 256, Reporter's Transcript. Zellerbach (pp. 237, 238) wrote the fruit company on July 13, 1929, of its disappointment that it had not made payment on July 10th of its note, and of its failure to receive the note to cover the June purchases, further, that it was important that the note installments be kept up so that ''we can get our contracts clearly defined on this year's purchases. Otherwise your failure to do this might interfere with shipments of your this year's orders'', and Pioneer is told that it should not ask approval of shipments ''until details of account are arranged and terms of payment understood between us''.

Anderson, in explanation of the letters, testified that his company was unwilling to let Pioneer have much more credit unless he could find out what they were going to do about paying for it. (Rep. Trans., p. 240.) It is significant that appellant never communicated directly with Virden Packing Company upon the subject of Pioneer's debt or Virden's agreement of guaranty or agreement to execute one. (Rep. Trans., p. 228.) To the indifferent person it seems as though this instrument had some esoteric significance and that the Virden Packing Company as a corporation was not to be let into the secret.

Appellant's claim that respondent is estopped to question the authority of its president to execute the instrument fails because respondent had never held out Virden as authorized, to the knowledge of Zellerbach, to execute on its behalf any contracts, with or without the authorization of its directors. The respondent in this case never made an admission or did any act with the intention of influencing the appellant, nor had appellant any knowledge of the extent to which

Virden had, before taking this instrument, assumed to aid the Pioneer Fruit Company, with or without knowledge of respondent's directors. (10 Cal. Jur. 627, sec. 14, citing cases.)

Along in 1930 when the Pioneer Paper Company could get no more credit and needed paper, Virden, as president of the packing company, made an agreement in July of 1930 with the Zellerbach Paper Company, whereby the packing company bought certain paper from appellant, instructing it to deliver the same to the Pioneer, but no resolution was ever passed by which Virden guaranteed any of the debts of the Pioneer, and the goods purchased under the above arrangement are not in suit. (Rep. Trans., p. 447.)

■ Plaintiff claims error in the trial court's admitting evidence that the appellant had prepared a claim in bankruptcy against the Pioneer, and that it had been one of the petitioners in the involuntary bankruptcy. This evidence was permitted to throw such light as it might on the question whether appellant regarded itself as a guarantee of the Virden Packing Company. Standing alone such evidence would have been inadmissible, and the error of the admission of such evidence would have been prejudicial as Zellerbach had the right to pursue its immediate obligor before looking to a 'guarantor. In the premises it is not material. ■ Further it complains because the court permitted a showing that Anderson of the paper company had served upon a creditor's committee of Pioneer and had not disclosed the existence of this alleged guaranty. If Anderson had been a member of the general creditor's committee, there would be some point to this complaint, but he was appointed by James who became president of the Virden Packing Company after the death of Virden, and after the institution of the bankruptcy proceedings, with a view to working out, if possible, the salvation of the Pioneer Company, and in the light of the surrounding circumstances this ruling was not prejudicial.

■ Respondent having proved an absence of knowledge in the directors of the execution of this instrument appellant assigns as error the trial court's refusal to permit cross-examination to show that the directors knew little or nothing of Mr. Virden's activities generally as president and manager of the company. This ruling did not prejudice the rights of the appellant because there is no room for the application of ostensible agency, and further, notwithstanding this ruling

everything that it might thereby have shown was fully developed.

It is concluded that Virden had not the authority to execute an unconditional and unlimited guaranty of credits of the Pioneer Paper Company; that the instrument in suit is not such a guaranty but at most was an agreement by Virden to have his company execute a guaranty, that this never was done, and that the judgment should be and is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 13, 1936, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing after decision by the District Court of Appeal, First District, Division One, is denied. We withhold our approval of that portion of the opinion which holds that the guaranty relied upon by appellant is not a continuing guaranty. Upon that question we expressly refrain from expressing any opinion.

Shenk, J., and Thompson, J., voted for a hearing.